CLEVELAND ELECTRIC ILLUMINATING CO., APPELLANT AND CROSS-APPELLEE, *v.* ASTORHURST LAND COMPANY, APPELLEE AND CROSS-APPELLANT.

[Cite as Cleveland Elec. Illum. Co. *v.* Astorhurst Land Co. (1985), 18 Ohio St. 3d 268.]

(No. 83-1968—Decided July 24, 1985.)

*Squire, Sanders & Dempsey, Eben G. Crawford* and *Gregory A. Cada,* for appellant and cross-appellee.

*Kelley, McCann & Livingstone, Stephen M. O'Bryan, Mark J. Valponi* and *Michael Ann Johnson,* for appellee and cross-appellant.

HOLMES, J. In presenting its case to this court, CEI argues that specific jury instructions are no longer required to be given by a trial court in that Civ. R. 51(A) has abolished such instructions, and that the law applicable to the case is to be set forth by the trial court in its general charge to the jury. Appellant essentially contends that in a land appropriation action involving a partial taking, a sufficient charge is one which generally informs the jury that the property owner is entitled to be compensated for any loss in value to the residue of his property caused by the taking as well as the condemnor's use of easement rights acquired; and, further, that it is not error for the court to refuse to instruct the jurors that they may consider one or more specific elements of potential damage which the property owner claims will diminish the value of the residue.

Conversely, on cross-appeal, Astorhurst argues that a trial court commits plain error when it instructs that eight, rather than nine, members of a twelve-member jury are sufficient to sign a jury verdict. Astorhurst also claims error in the trial court's refusal to allow cross-examination of the CEI witness relative to the amount of compensation that he received for an earlier power line easement.

I

CEI's Appeal

CEI correctly points out that the law prior to the enactment of the Civil Rules required the trial court, upon request of counsel, to give a

special jury instruction, if correct, and a failure to do so constituted reversible error when such error was prejudicial to the complaining party. See *Washington Fidelity Natl. Ins. Co.* v. *Herbert* (1932), 125 Ohio St. 591; *Smith* v. *Flesher* (1967), 12 Ohio St. 2d 107 [41 O.O.2d 412], paragraph two of the syllabus. This rule of law was nullified by the enactment of Civ. R. 51(A). See *Presley* v. *Norwood* (1973), 36 Ohio St. 2d 29, 32 [65 O.O.2d 129]. This procedural rule provides in pertinent part:

"At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. Copies of such requests shall be furnished to all other parties at the time of making such requests. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. * * *"

The Civil Rules are applicable to land appropriation proceedings except to the extent that such rules would, by their nature, be clearly inapplicable. Civ. R. 1(C).

It is this court's belief that the function of the trial court's general charge to the jury is the same now as it was prior to the enactment of the Civil Rules, *i.e.*, to state clearly and concisely the principles of law necessary to enable the jury to accomplish the purpose desired. See *Pickering* v. *Cirell* (1955), 163 Ohio St. 1, 4 [56 O.O. 1].

In an appropriation case, one of the issues for jury determination is that of damages to the residue estate. It is essential for the court generally to instruct the jury on the nature and the elements which comprise this type of injury. In an effort to assist the trial courts of this state, the Ohio Judicial Conference has promulgated jury instructions relative to these elements in 3 Ohio Jury Instructions (1973) 23, Section 301.21.

In comparison to Section 301.21, a review of the appropriate portions of the trial court's charge here relative to damage to the residue clearly shows that the charge encompassed the main thrust of the Ohio Jury Instructions. The court informed members of the jury that they could take into account "any present or future damage that you may find are [sic] reasonably certain to occur, that affect the present market value." Coupled with this rather broad instruction, the court had previously permitted appellee's counsel to include the suggested elements of damage in his closing argument to the jury. Accordingly, counsel did in fact dwell upon the dangers which would allegedly exist with the installation of the power transmission lines and any adverse effects resulting to the residue of Astorhurst's golf course.

It is apparent that the trial court appropriately determined that the special instructions requested by counsel for Astorhurst would unduly emphasize and draw the jury's attention to the factors suggested within such instructions. For the court to instruct on such specific items might have unduly emphasized those elements at the expense of other evidence presented to the jury.

Additionally, we underscore the fact that the trial court gave counsel the opportunity to argue the major points of his proposed instructions so no resulting prejudice to Astorhurst occurred even if it could be concluded that the court erred in not giving the requested instructions. Therefore, we reverse the judgment of the court of appeals on this issue.

## II
### Astorhurst's Cross-Appeal

Turning to appellee's cross-appeal, the trial court clearly erred in its instruction concerning the number of jurors required to sign the verdict form. However, the difficulty presented on appeal is the absence of an objection by counsel. A review of the scenario surrounding this issue discloses that after the matter was submitted to the jury, counsel for CEI awakened to the fact that the court's statement was in error, and he accordingly called counsel for Astorhurst. During the conversation, it was agreed that counsel for CEI would call the court and suggest that the bailiff inform the deliberating jury that the concurrence of at least nine jurors was needed to return an otherwise lawful verdict. Counsel promptly called the court but was informed that the judge was in conference. He left a message for the judge to return his call. Several minutes later, however, he was told by a secretary in his office that the court had called to advise him that the jury had reached a verdict and he should return to the courthouse. When counsel for both parties arrived at the courthouse, they immediately proceeded to chambers and advised the judge of the problem. The judge sent a court employee to determine how many jurors had signed the verdict. The employee returned to advise that nine jurors had placed their signatures on the verdict form. It was then agreed by the court and counsel that the jury should be brought into the courtroom to announce its verdict. The verdict was in fact signed by nine jurors including the foreman.

Under these circumstances, we hold that the court of appeals was correct in concluding that Astorhurst was precluded from claiming this error on appeal. There was neither an objection when the instructions were initially given nor at any time subsequent to the submission of the issues to the jury.

Civ. R. 51(A) mandates a timely objection to any erroneous instruction given by the trial court. The rule states as follows:

"A party may not assign as error the giving or the failure to give any instruction unless he objects thereto before the jury retires to consider its verdict, stating specifically the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."

After the verdict was announced and the jury discharged, but still in the courtroom, the jury foreman stated to both counsel that he did not agree with the verdict but only signed the form because he thought it was academic since eight others had already signed the form. Astorhurst's

counsel later obtained the foreman's affidavit setting forth these facts, and appended it to the motion for a new trial.

Evid. R. 606(B) governs the type of evidence which may be considered when a court inquires into the validity of a verdict. The pertinent portion of the rule provides:

"Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith. * * * His affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying will not be received for these purposes."

Applying this rule to the facts here, the affidavit of the jury foreman would not be admissible in support of a claim that the foreman had not intended to vote with those in favor of the returned verdict. Thus, there was a lack of evidence which could support a finding that the verdict was anything other than correct in every respect as well as duly agreed to and signed by three-fourths of the jurors considering the action.

In addition, *Long* v. *Cassiero* (1922), 105 Ohio St. 123, a case decided prior to the Civil Rules, is directly on point and supports our conclusion herein. In *Long,* nine jurors gave post-trial affidavits, each stating that his or her verdict was erroneous due to a misunderstanding of the court's charge. Nevertheless, the trial court refused to grant a new trial, and this court affirmed, holding in paragraph one of the syllabus:

"A juror cannot, by affidavit, impeach his verdict by an attempt to prove that it was rendered through a misunderstanding of the court's charge, or by showing an intention different from that disclosed by his verdict."

As this court stated in *Long* at 126-128:

"* * * [It] would be a dangerous precedent to establish in this state were we to announce the principle that jurors, after their separation, should be allowed to change their verdict to conform to their real intention, or to impeach their verdict by any attempt to prove that it was rendered under a misunderstanding of the court's charge. * * *

"* * *

"If the erroneous verdict was brought about by the charge of the court, error should be predicated, not upon affidavits that the jury misunderstood the charge, but upon the ground that the charge was so misleading and prejudicial as to induce the erroneous verdict."

Applying this rule to the case *sub judice,* Astorhurst must predicate error on the charge itself, not upon the affidavit of the jury foreman. Specifically, Astorhurst must prove that the eight-juror instruction was "so misleading and prejudicial as to induce * * * [an] erroneous verdict." *Long, supra,* at 128. Appellee cannot sustain its burden of proof because

there is nothing in the trial court's charge that can be said to have induced the foreman to sign a verdict with which he did not agree. The trial court did not instruct him to sign the verdict either (a) after eight other jurors had signed it, or (b) when it became "academic" for him to refuse to do so. To the contrary, the trial court instructed that only those jurors who concurred in the verdict should sign the form.

Also as to this issue, we hold that Astorhurst may not prevail upon the basis of claimed "plain error." The plain error doctrine is utilized in civil matters only under exceptional circumstances to prevent a manifest miscarriage of justice. See *Reichert* v. *Ingersoll* (1985), 18 Ohio St. 3d 220. We conclude that the instant case does not present a situation in which the doctrine should be invoked, in that a constitutionally impaneled jury of twelve reached a verdict signed by nine members thereof clearly within the confines of the evidence and the law applicable thereto.

We, therefore, hold that the court of appeals properly determined that it would have been improper to use the affidavit to impeach the jury's verdict.

Finally, we find that the trial court properly disallowed Astorhurst's counsel from eliciting, upon cross-examination of Albert Purola, the amount paid Purola for an easement over a golf course in which he was part-owner. We do so for various reasons. First, Purola was not called as an evaluation witness, but for purposes of showing that an earlier construction of a power line had not occasioned any adverse effects on the playing conditions of his golf course. Therefore, any cross-examination of this witness as to the price paid him for the prior utility easement would not have been within the area of cross-examination relative to his direct testimony.

More important, however, is the general law in this area which prohibits testimony of amounts paid by a party for other related takings. In *Masheter* v. *Brewer* (1974), 40 Ohio St. 2d 31 [69 O.O.2d 202], syllabus, this court pronounced the following:

"In an appropriation proceeding, the price paid by an appropriating authority in the purchase of other property is ordinarily not sufficiently voluntary to represent a dependable index of fair market value, and it is error for the court to admit such prices in evidence as substantive proof of the fair market value of property being appropriated."

Additionally, Astorhurst argues that the cross-examination of Purola concerning the amount that he received was "to show an overpayment to Mr. Purola so as to impeach his testimony and clarify its impact on the jury." We conclude that whatever amount Purola received for his property several years previously was not shown to have any relevancy with this case. Therefore, the trial court's exclusion of such testimony was not error.

Based on the foregoing, the judgment of the court of appeals is hereby reversed concerning the issue contained in CEI's appeal, and affirmed on

all issues within Astorhurst's cross-appeal. The judgment of the trial court is reinstated.

*Judgment reversed in part*
*and affirmed in part.*

SWEENEY, LOCHER, C. BROWN, DOUGLAS and KEEFE, JJ., concur.

CELEBREZZE, C.J., dissents.

KEEFE, J., of the First Appellate District, sitting for WRIGHT, J.

CELEBREZZE, C.J., dissenting. I dissent from the majority's conclusion that the trial court's patently erroneous instruction regarding the number of jurors required to reach a verdict does not constitute reversible plain error. In this case the trial court wrongly instructed the twelve-member jury that eight of their number constituted a three-fourths majority. This is plainly error as almost any novice mathematician would conclude.

Section 5, Article XIII of the Ohio Constitution requires a jury of twelve in this case. R.C. 163.14 and Civ. R. 48 require a three-fourths majority verdict (*i.e.,* nine jurors).

*Schade* v. *Carnegie Body Co.* (1982), 70 Ohio St. 2d 207 [24 O.O.3d 316], paragraph one of the syllabus provides: "When a party fails to object to the giving of * * * a jury instruction * * *, the party may not assign as error the giving of * * * such instruction." However, the court notes at page 209 that Ohio recognizes a "plain-error" exception to this rule for obvious errors, not objected to, in order to prevent a manifest miscarriage of justice. I believe this instruction was fundamentally and obviously erroneous and prejudicial. The error is not harmless because the jurors conducted their deliberations under a false pretense resulting in a misunderstanding of the importance of their votes. The court's instruction is in violation of the Constitution and laws of this state and the error should not be deemed as being waived.

I agree with the majority's observation that the judge's instruction is not extraneous information under Evid. R. 606 and that the juror's affidavit was therefore inadmissible. See *Schwindt* v. *Graeff* (1924), 109 Ohio St. 404; *Long* v. *Cassiero* (1922), 105 Ohio St. 123.

Nevertheless, the instruction itself created an exceptional circumstance warranting the plain-error doctrine and it is a miscarriage of justice not to afford appellee its right to a clear jury instruction on the correct law. The court's informal poll of the jurors to determine if the proper majority had signed the verdict form did not correct the error because it did not remedy the false pretense under which the jury conducted its deliberations. The poll was little more than an inexact tool to measure the extent of damage caused by the error.

One can only speculate whether my brethren would stamp their approval on an instruction that seven, five, or one vote is sufficient to constitute a three-fourths jury verdict. Surely Ohio's courts should not contravene such a clear constitutional and statutory mandate concerning such a fundamental right. Today's decision will no doubt "* * * induce the figure of justice to lift her blindfold to see what is going on * * *."[2] To allow such an egregious wrong to stand without remedy invites her query of whether our courtrooms remain effective citadels of justice, not to mention "new math."

For these reasons, I dissent.

---

[2] *Rini* v. *New York Cent. RR. Co.* (1968), 429 Pa. 235, 240 A.2d 372, 377 (Musmanno, J., dissenting).