## Eberly
## v.
## Barmet Industries, Inc.
[Cite as 3 AOA 102]

Case No. 89AP040039
Tuscarawas County, (5th)
Decided May 16, 1990

Eugene P. Okey, Steven P. Okey, 337 Third Street N.W., Canton, Ohio 44702; Joseph A. Wheeler, 113 East Third Street, Uhrichsville, Ohio 44683, for Plaintiff-Appellant.

Ralph F. Dublikar, Philip M. Vigorito, 205 Mellett Bldg. Canton, Ohio 44702, for Defendant-Appellee, A.P. Controls, Inc.

David T. Moss, 624 Market Avenue North, Canton, Ohio 44702, for Defendant-Appellee, United Sheet Metal Corp.

GWIN, J.

Barmet Industries, Inc. (Barmet) is a corporation in the business of recycling aluminum scrap. Although Barmet has several plants located in various states, the subject of this case centers on the Barmet facility located in Uhrichsville, Ohio. The Uhrichsville facility was equipped with a "salt cake crushing operation." This operation consisted of taking "salt cake," a by-product from recycling aluminum, and crushing it into more usable forms. In order for Barmet to comply with Environmental Protection Agency guidelines, it had to install a ventilation system to control the dust created by the crushing operation.

Barmet subsequently hired A.P. Controls, Inc. (A.P. Controls) to prepare a "line drawing" which "contained the basic information for the design of the [ventilation] system."[1] (T. p. 382.) From this line drawing, a Barmet employee prepared more detailed drawings and consulted with A.P. Controls for some of these details. Thereafter, Barmet contracted with Chesrown-Pulliam Sales, Inc. (Chesrown) for Chesrown to provide the needed materials for the construction of the ventilation system. Chesrown in turn ordered said materials from United Sheet Metal Corp. (United Sheet). Armed with the needed

materials, Barmet employees constructed and installed the entire ventilation system.

On Friday, June 24, 1983, Walter A. Eberly (decedent), a Barmet employee, was standing on the Uhrichsville facility floor when part of the ventilation system collapsed, fell approximately 40 feet, struck decedent on the head and shoulders, and killed him instantly.

On May 3, 1985, decedent's widow, Nancy A. Eberly, as executrix of decedent's estate (appellant), filed a wrongful death action in the Tuscarawas County Court of Common Pleas against Barmet based upon an intentional tort. Appellant also filed a negligence action against A.P. Controls, Chesrown, and United Sheet.[2] Barmet filed a separate action against A.P. Controls and United Sheet, seeking damages for increased workers' compensation premiums.

Following the trial court's consolidation of these actions, a jury was impaneled on March 14, 1989. After appellant presented her case, the trial court granted Barmet's motion for a directed verdict on the intentional tort claim. The trial court subsequently granted A.P. Controls' and United Sheet's motions for a directed verdict on Barmet's claims for increased workers' compensation premiums.[3]

On March 29, 1989, the jury returned a verdict finding A.P. Controls 10% negligent; Barmet 90% negligent; United Sheet 0% negligent; and Chesrown 0% negligent. The jury further found that the negligence of Barmet and A.P. Controls was the proximate cause of decedent's death, that United Sheet had not manufactured a product with a defective design, and that appellant sustained damages in the amount of One Million Dollars.

On April 11, 1989, the trial court entered judgment for appellant against A.P. Controls in the amount of One Hundred Thousand Dollars, i.e., 10% of the One Million Dollar award. It is from this judgment that appellant now seeks our review and raises the following assignments of error.

"I. THE TRIAL COURT ERRED IN APPLYING THE PROVISIONS OF THE COMPARATIVE NEGLIGENCE STATUTE TO THIS CASE.

"A. THE TRIAL COURT ERRED IN INSTRUCTING THE JURY TO DETERMINE THE PERCENTAGE OF NEGLIGENCE ATTRIBUTABLE TO EACH DEFENDANT.

"B. THE TRIAL COURT ERRED IN INSTRUCTING THE JURY TO DETERMINE THE PERCENTAGE OF NEGLIGENCE ATTRIBUTABLE TO A NON-PARTY.

"C. THE TRIAL COURT ERRED IN APPLYING THE JURY DETERMINATIONS AND THE PROVISIONS OF THE STATUTE TO APPORTION DAMAGES AND TO GRANT JUDGMENT AGAINST THE APPELLEE A-P CONTROLS, INC., FOR ONLY 10% OF THE JURY VERDICT.

"II. THE TRIAL COURT ERRED IN REFUSING TO INSTRUCT THE JURY THAT THE KNOWLEDGE OF AN AGENT IS IMPUTED TO THE PRINCIPAL."

United Sheet, as cross-appellant, assigns the following as error:

"III. THE TRIAL COURT ERRED IN REFUSING TO INSTRUCT THE JURY THAT THE KNOWLEDGE OF AN AGENT IS IMPUTED TO THE PRINCIPAL."

A.P. Controls, as cross-appellant, assigns the following as error:

I.
"THE TRIAL COURT ERRED IN OVERRULING DEFENDANT/CROSS-APPELLANT'S MOTION FOR DIRECTED VERDICT FOR TWO SPECIFIC REASONS:

"1. THE PLAINTIFF/CROSS-APPELLEE FAILED TO ESTABLISH THAT THE DEFENDANT A.P CONTROLS, INC. HAD OR BREACHED ANY LEGAL DUTY TO THE PLAINTIFF; AND

"2. PLAINTIFF/CROSS-APPELLEE FAILED TO ESTABLISH THAT ANY ACT OF THE DEFENDANT A.P. CONTROLS, INC. WAS A PROXIMATE CAUSE OF THE ACCIDENT.

II.
"THE TRIAL COURT ERRED IN EXCLUDING EVIDENCE OF STATEMENTS MADE BY THE DECEDENT, DOUGLAS WARFEL, CONCERNING MR. WARFEL'S ACTIVITIES AND RESPONSIBILITIES PURSUANT TO HIS CONTRACT WITH BARMET INDUSTRIES, INC. WHICH STATEMENTS WERE SOUGHT TO BE INTRODUCED SOLELY TO REBUT PREVIOUS TESTIMONY PRESENTED BY PLAINTIFF.

### III.
### "THE TRIAL COURT ERRED WHEN, DURING JURY DELIBERATIONS AND IN RESPONSE TO A QUESTION SUBMITTED BY THE JURY AS TO THE DEFINITION OF PROXIMATE CAUSE, THE COURT FAILED TO PROVIDE THE COMPLETE DEFINITION, WHICH HAD BEEN PROVIDED IN THE COURT'S ORIGINAL CHARGE."

We reverse and modify this judgment because of two egregious errors: 1) the trial court committed plain error by instructing the jury to apply the comparative negligence statute where it was undisputed that decedent was not contributorily negligent; 2) the trial court erred by instructing the jury, over objection, that it must determine the negligence of Barmet, a non-party.

### I.

In her first assignment, appellant claims that a trial court errs when it applies the comparative negligence statute (R.C. 2315.19) to a case where no evidence of contributory negligence exists. In this case, it is argued that the erroneous application of the statute is apparent in three ways:

1) the jury was instructed to determine each of the defendant's percentage of negligence;

2) the jury was instructed to determine Barmet's negligence; and

3) the trial court awarded appellant only 10% of the total jury verdict.

The comparative negligence statute the trial court applied to this case reads:[4]

"R.C. 2315.19 [Contributory negligence does not bar recovery where defendant's negligence is greater.]

"(A)(1) In negligence actions, *the contributory negligence of a person does not bar the person or his legal representative from recovering damages* that have directly and proximately resulted from the negligence of one or more other persons, if the contributory negligence of the *person bringing the action* was no greater that the combined negligence of all other persons from whom recovery is sought. However, *any damages recoverable by the person bringing the action shall be diminished by an amount that is proportionately equal to his percentage of negligence,* which percentage is determined pursuant to division (B) of this section. This section does not apply to actions described in section 4113.03 of the Revised Code.

"(2) If recovery for damages determined to be directly and proximately caused by the negligence of more than one person is allowed under division (A)(1) of this section, each person against

whom recovery is allowed is liable to the person bringing the action for a portion of the total damages allowed under that division. The portion of damages for which each person is liable is calculated by multiplying the total damages allowed by a fraction in which the numerator is the person's percentage of negligence, which percentage is determined pursuant to division (B) of this section, and the denominator is the total of the percentages of negligence, which percentages are determined pursuant to division (B) of this section to attributable to all persons from whom recovery is allowed. Any percentage of negligence attributable to the person bringing the action shall not be included in the total of percentages of negligence that is the denominator in the fraction.

"(B) *In any negligence action in which contributory negligence is asserted as a defense,* the court in a nonjury trial shall make findings of fact, and the jury in a jury trial shall return a general verdict accompanied by answers to interrogatories, that shall specify:

"(1) The total amount of damages that would have been recoverable by the complainant but for his negligence;

"(2) The percentage of negligence that directly and proximately caused the injury, in relation to one hundred per cent, that is attributable to each party to the action.

"(C) After the court makes its findings of fact or after the jury returns its general verdict accompanied by answers to interrogatories, *the court shall diminish the total amount of damages recoverable by an amount that is proportionately equal to the percentage of negligence of the person bringing the action,* which percentage is determined pursuant to division "(B) of this section. If the percentage of the negligence of the person bringing the action is greater than the total of the percentages of the negligence of all other persons from whom recovery is sought, which percentages are determined pursuant to division (B) of this section, the court shall enter a judgment for the persons against whom recovery is sought." (Emphasis added.)

A plain reading of the above statute, especially the underscored portions in each division, indicates that its provisions apply only to cases where "the person bringing the action" was contributorily negligent. Likewise, our Supreme Court has stated that "the doctrine of comparative negligence, consistent with the provisions of R.C. 2315.19, is a defense to a claim for relief for negligence. Its application is triggered by the fact

finder's determination that the defendant, as well as the plaintiff, was negligent." *Seeley v. Rahe* (1985), 16 Ohio St. 3d 25, 27.

Subdivision (A)(2) of the statute provides for several liability, i.e., individual defendants are liable only for their equitable share, as opposed to joint and several liability. However, this subdivision only applies to cases where a plaintiff is negligent.

If the situation does not come under subdivision (A)(1), recovery is not allowed under that subsection and damages are not apportioned under subdivision (A)(2). If more than one defendant is found liable to a wholly innocent plaintiff, the defendants will be jointly and severally liable. *Carney v. McAfee* (Dec. 31, 1986), Erie App. No. E-85-58, unreported, p. 19.

In this case, the trial court instructed the jury that "decedent, Walter Eberly, did not cause or contribute in any way to the collapse of the duct work, and did not cause or contribute in any way to his own death." (T. p. 1346.)[5]

Nevertheless, the trial court further instructed the jury that one of "the issues which you will need to consider and determine from the evidence and the law [is] what is the percentage of negligence, if any, attributable to each of the defendants..." (T. pp. 1359-60.) The trial court also submitted the following interrogatory to the jury.

"WHAT ARE THE PERCENTAGES OF NEGLIGENCE PROXIMATELY RESULTING IN THE DEATH OF WALTER EBERLY ATTRIBUTABLE TO THE FOLLOWING?

___% A.P. Controls

___% United Sheet Metal

___% Chesrown-Pulliam

___% Barmet Industries

100% TOTAL"

As indicated above, the jury ultimately found A.P. Controls 10% negligent and Barmet 90% negligent.

The trial court's R.C. 2315.19 apportionment instructions and interrogatory were inappropriate in this case because no contributory negligence existed. Other appellate districts agree with this position. See *Nice v. Murphy* (June 14, 1985), Carroll App. No. 501, unreported (apportioning damages under R.C. 2315.19 is inappropriate where no contributory negligence is

found); *Hurshman v. Baker* (June 2, 1988), Cuyahoga App. No. 53688, unreported (R.C. 2315.19 does not apply if the plaintiff is not negligent); *Carney v. McAfee, supra.*

A.P. Controls asserts that the trial court properly instructed the jury to determine the percentage of negligence attributable to each defendant. To support this assertion, A.P. Controls cites R.C. 2307.31 (Contribution Among Tortfeasors) and *Couch v. Thomas* (1985), 26 Ohio App. 3d 55.

R.C. 2307.31 provides that "[t]he right of contribution exists only in favor of a tortfeasor who has paid more than his proportionate share of the common liability, and his total recovery is limited to the amount paid by him in excess of his proportionate share." In *Travelers Indemnity Co. v. Trowbridge* (1975), 41 Ohio St. 2d 11, our Supreme Court stated:

"Contribution, when it exists, is the right of a person who has been compelled to pay what another should have paid in part to require partial (usually proportionate) reimbursement and arises from principles of equity and justice."

The right of contribution exists between joint tortfeasors and may be sought after, not before, a jury has imposed liability. Therefore, R.C. 2307.31 does not give the trial court authority to instruct a jury to determine the percentage of negligence attributable to numerous defendants prior to the jury's determination of liability. Once a jury determines that more than one defendant is liable for plaintiff's injuries, the right of contribution may then be properly raised by one of those defendants. In discussing R.C. 2307.31 and 2307.32, our Supreme Court held:

"It is clear from the provisions of the Act that the liability for contribution is distinct from the liability for the jointly committed tort. Liability to an injured party arises at the time of the tort. Liability for contribution arises only in favor of a joint tortfeasor and then only when the tortfeasor has paid more than his proportionate share of the common liability. Ohio's statutory scheme for contribution does not concern the basic relationship of tortfeasors to one who has suffered injury but establishes the relationship of tortfeasors *inter se* when one of them discharges the common liability." *Bowling v. Heil Co.* (1987), 31 Ohio St. 3d 277, 287, quoting *national Mut. Ins. Co. v. Whitmer* (1982), 70 Ohio St. 2d 149, 151-152.

A.P. Controls' reliance on *Couch, supra*, is likewise misplaced. In *Couch*, the Court of Appeals for Butler County held that a tortfeasor

should only be liable for his specific percentage of negligence if a joint tortfeasor is immune from contribution. We believe this holding attempts to abolish the law of joint and several liability and is contrary to the holding set out in *Bowling* and *Whitmer, supra.*[6]

In its application of the comparative negligence statute, not only did the trial court submit the above interrogatory to the jury requiring it to assign the percentage of negligence attributable to Barmet, but it also instructed the jury that it had to determine whether Barmet was negligent.[7] Appellant objected to this instruction. (T. Vol. IV p. 1216-17.) This was clearly error because no negligence claim was asserted against Barmet. Assuming *arguendo* that R.C. 2315.19 applied to the instant case, the trial court still should not have given the instruction and interrogatory regarding Barmet's negligence. R.C. 2315.19(B)(2) provides that a fact finder is to determine the percentage of negligence "attributable to *each party* to the action," not non-parties. Here, having been directed out, Barmet was no longer a party to the action when the case was submitted to the jury. Accordingly, the trial court's submission of the interrogatory and instruction concerning Barmet was improper.

The error most apparent in the trial court's application of the comparative negligence statute is demonstrated by the trial court's apportionment of damages consistent with the jury's determination of the percentage of negligence attributable to each defendant. The jury found that appellant was damaged in the amount of One Million Dollars, yet the trial court entered judgment for appellant in the amount of One Hundred Thousand Dollars. Obviously, the trial court took the jury's finding that A.P. Controls, the only party to the action found to be negligent, was 10% negligent and granted judgment against A.P. Controls in the amount of One Hundred Thousand Dollars - 10% of the jury's total award.

Even if it did apply, R.C. 2315.19 only permits a plaintiff's damages to be diminished by "an amount that is proportionately equal to *his* percentage of negligence." Nowhere in this statute nor any other statute does it permit a trial court to diminish a plaintiff's award for damages in an amount that is proportionately equal to a defendant's negligence as the trial court did here.

We now turn our attention to the matter of how to treat the trial court's erroneous application of R.C. 2315.19. Appellant never objected to the trial court's instructions or interrogatory regarding the comparative negligence statute. Civ. R. 51(A) provides in part:

"A party may not assign as error the giving or failure to give any instruction unless he objects thereto before the jury retires to consider its verdict, stating specifically the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."

Instead, appellant requests that we review the trial court's application of the comparative negligence statute under the doctrine of "plain error."

"A 'plain error' is obvious and prejudicial although neither objected to nor affirmatively waived which, if permitted, would have a material adverse effect on the character and public confidence in judicial proceedings." *Schade v. Carnegie Body Co.* (1982), 70 Ohio St. 2d 207, 209. "Implementation of the plain error doctrine is to be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Reichert v. Ingersoll* (1985), 18 Ohio St. 3d 220, 223, citing *State v. Long* (1978), 53 Ohio St. 2d 91, para. 3 of the syllabus.

In the instant case, we find that the error by the trial court was apparent on the face of the record and that appellant was prejudiced by the same. The trial court erred in its application of the comparative negligence statute where no evidence of contributory negligence existed and where the statute plainly limited its application to negligence actions involving contributory negligence. Appellant was also prejudiced by the error through the trial court's award of only 10% of the total award based upon the jury's finding that only one party (A.P. Controls) was 10% negligent. Finally, to prevent appellant from realizing her true damages would be a manifest miscarriage of justice. Therefore, we believe the plain error doctrine applies to this case.

Having ruled that the trial court committed plain error, our next task is to determine a remedy. As noted above, when more than one defendant is liable to an innocent plaintiff, these defendants are jointly and severally liable. The twist in this case is that the jury found one defendant (A.P. Controls) 10% negligent and a non-party defendant (Barmet) 90% negligent.

Had the trial court not erroneously instructed the jury to apply the comparative negligence statute to the defendants, including a non-party defendant (Barmet), the jury would merely have found A.P. Controls negligent without the assign-

ment of a percentage. Therefore, A.P. Controls, the only party defendant found to be negligent, is completely liable for the total amount of the jury awarded damages, i.e., One Million Dollars.

This remedy may appear harsh, but we are of the opinion that a new trial is unnecessary because no error existed in the jury's determination of the amount of damages. The only error present was the trial court's application of the comparative negligence statute, and we have corrected that error through the above remedy.

We point out that R.C. 2307.31(A) provides that "where two or more persons are jointly or severally liable in tort for the same..wrongful death, there is a right of contribution among them even though judgment has not been recovered against all or any of them." We decline at this time, however, to discuss the issues of the effect, if any, of the Workers' Compensation Law on the law of contribution and *res judicata*.

Accordingly, appellant's first assignment of error is well taken.

## II.

In her second assignment, appellant claims that the trial court erred in refusing to instruct the jury that the knowledge of an agent (Chesrown) is imputed to the principal (United Steel).

"It is within the sound discretion of a trial court to refuse to admit proposed jury instructions which are either redundant or immaterial to the case." *Bostic v. Connor* (1988), 37 Ohio St. 3d 144, para. 2 of the syllabus.

It is well-settled that the knowledge of an agent received while acting within the scope of his agency relationship will be imputed to his principal. *Fay v. Swicker* (1950), 154 Ohio St. 341, para. 1 of the syllabus, *rev'd on other grounds*. In the instant case, the evidence presented revealed that the scope of the agency relationship between Chesrown and United Steel was limited to sales. However, to establish United Steel's liability, it was necessary for appellant to prove United Steel had knowledge of the ventilation system design. Any knowledge Chesrown received regarding the design was outside the scope of the agency relationship and should not have been imputed to United Steel. The imputed knowledge instruction thus becomes immaterial to this case.

Accordingly, the trial court did not abuse its discretion in refusing to give the requested instruction, and we overrule appellant's second assignment of error.

We now turn to United Steel's cross-assignment of error.

## I

United Steel has requested that its sole assignment of error be withdrawn if we overrule appellant's second assignment of error. Because we have overruled appellant's second assignment, we consider United Steel's sole assignment hereby withdrawn.

We now turn to A.P. Controls' cross-assignments of error.

## I

We overrule A.P. Controls' first assignment of error because there was sufficient evidence presented at trial establishing A.P. Controls' duty to appellant, breach of duty, and proximate cause of decedent's death.

Accordingly, the trial court properly overruled A.P. Controls' motion for directed verdict.

## II

In their second assignment, A.P. Controls claims that the trial court erred in excluding evidence of a memorandum which contained statements allegedly made by Douglas Warfel, president and sole stockholder of A.P. Controls, regarding appellant's law suit. Said memorandum was "simultaneously and contemporaneously" prepared by Mr. Pulliam (vice-president of Chesrown) while having a conversation with Mr. Warfel. (T. p. 930.) Mr. Warfel died after the law suit was filed but before the case was tried.

The trial court excluded the memorandum and Mr. Pulliam's testimony regarding the same after finding such constituted hearsay evidence and did not meet any hearsay exceptions.[8] We agree that said memorandum constituted hearsay.

Rule 801.

"* * *

"(C) Hearsay. 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

A.P. Controls, however, asserts that the hearsay exception under Evid. R. 804(B)(5) applies to this memorandum. That rule reads:

*"Statement by a deceased, deaf-mute, or incompetent person.*

"The statement was made by a decedent, or a deaf-mute who is now unable to testify, or a mentally incompetent person, where (a) the estate or personal representative of the decedent's estate, or the guardian or trustee of the deaf-mute or incompetent person is a party, and (b) the statement was made before the death or the development of the deaf-mute condition or the incompetency, and (c) the statement is offered

to rebut testimony by an adverse party on a matter which was within the knowledge of the decedent, deaf-mute, or incompetent person."

We underscore that the above rule has three conjunctive conditions which must be met before the exception will apply. Here, A.P. Controls has failed the first condition because Douglas Warfel's estate or personal representative is not a party to this action. Instead, it is Warfel's corporation that is the party.

Accordingly, we overrule A.P. Controls' second assignment of error.

### III.

During its original charge, the trial court defined proximate cause and also defined intervening/superseding cause. While deliberating, the jury requested the definition of proximate cause. The trial court sent to the jury the definition of proximate cause and excluded the intervening/superseding cause definition. A.P. Controls now asserts that the trial court failed to repeat the complete definition of proximate cause by its failure to include the definition of intervening/superseding cause. We disagree.

The trial court would have been in error had it refused the jury's request for the definition of intervening/superseding cause. However, the trial court sent to the jury the definition requested and nothing more. From the record before us, we find the trial court did not err in this matter.

Accordingly, A.P. Controls' final assignment of error is hereby overruled.

For the foregoing reasons, we reverse the trial court's judgment as it relates to the amount of A.P. Controls' liability and hereby enter final judgment in favor of appellant and against A.P. Controls in the amount of One Million Dollars ($1,000,000.00).

*Judgment reversed in part and modified.*

SMART, J., concurs.

---

[1] Douglas Warfel was the president and sole stockholder of A.P. Controls and was the individual who prepared the line drawing for Barmet.

[2] Appellant additionally alleged that United Sheet was strictly liable for manufacturing a product with a defective design.

[3] No party has appealed the trial court's judgments in favor of Barmet.

[4] R.C. 2315.19 has since been amended effective January 5, 1988.

[5] In the instant case, although contributory negligence was initially pled as a defense, we believe that R.C. 2315.19(B) ("in any negligence action in which contributory negligence is asserted as a defense...") will not be triggered where, as here, no evidence is presented at trial to support such a defense.

[6] A.P. Controls also asserts that R.C. 2307.31(E) ("valid answers to interrogatories by a jury or findings by a court sitting without a jury in determining the liability of several defendants for an injury or wrongful death shall be binding as among such defendants in determining their right to contribution") gives a trial court authority to instruct the jury to assign the percentage of negligence attributable to each defendant prior to the jury's determination of liability. Nowhere in that subdivision is the trial court given authority to instruct a jury on apportioning the percentage of negligence among defendants where there is no evidence of contributory negligence as provided in R.C. 2315.19(B). Instead, subdivision (E) merely prohibits the relitigation of liability among joint tortfeasors once it is properly established. For example, had there been evidence of contributory negligence and the jury properly determined the percentage of negligence attributable to each party pursuant to R.C. 2315.19(B) or if a jury determined that one or more defendants were not liable, then subdivision (E) would prohibit the relitigation of those determinations.

[7] The trial court did not err by instructing the jury to *consider* the negligence, if any, of a third person, including Barmet. See *Schreiber v. National Smelting Co.* (1952), 157 Ohio St. 1, para. one of the syllabus. But it is error to instruct the jury to *determine* the percentage of a non-party's negligence.

[8] The trial court stated that the memorandum would be more reliable had Mr. Warfel written it instead of Mr. Pulliam.

MILLIGAN, P.J., dissents.

The result fashioned by the majority is unconscionable. It invokes the limited provisions of App. R. 12(B) and multiplies the verdict of the jury and the judgment of the trial court ten-fold (from $100,000 to $1,000,000), and fails to certify conflict with *Couch v. Thomas* (1985), 26 Ohio App. 3d 55.

*And this all in the name of "plain error."*

The most severe remedy this court should grant - assuming plain error, or error at all, is an order of remand for a new trail.

It is manifest that this case was conceived, pled, tried, submitted to the jury, and journalized, on the *comparative negligence track*. The whole trial process is channelled by this track. It is entirely different than a noncomparative negligence trial. The parties differ, pleadings differ, discovery differs, the appropriate direction

on *voir dire* differs, plaintiff's presentation of evidence differs, and defense evidence and strategy differs. The jury charge differs, interrogatories to the jury differ, the verdict form differs, the verdict differs, and the judgment differs.

A comparative negligence case and a negligence case are not the same law suit.

Here, a competent, well-trained, highly experienced compensation trial attorney disdained at virtually every stage of the proceedings the opportunity to invoke the comparative negligence protection he now seeks.

The case is routed on the comparative negligence track by the answer which invokes the comparative negligence statute. "Contributory negligence" is asserted as a defense. See R.C. 2315.19(D).

Plaintiff sought no pretrial summary judgment that he was not contributorily negligent. Civ. R. 56.

Plaintiff disdained any motion for directed verdict at the close of the evidence.

Plaintiff failed to object to several jury charges, including the charge of the court on plaintiff's contributory negligence, and the responsibility of the trial court to apportion negligence.

Plaintiff disdained to challenge the interrogatories couched in terms of comparative negligence.

Plaintiff failed to request interrogatories consistent with a principle of negligence and ultimate joint and several liability.

The majority ignores, and as a consequence emasculates, the specific, mandatory provisions of Civ. R. 51(A).

A party may not assign as error the giving or the failure to give any instruction unless he objects thereto before the jury retires to consider its verdict, stating specifically the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury.

The rubric employed by the majority to reach its finale is "plain error."[1]

I would overrule the comparative negligence assignments of error upon the authority of Civ. R. 51. Analysis should end.

However, the ruling of the majority requires an examination of the question:

"Did the trial court err in applying R.C. 2315.19 (comparative negligence)? If error, was the error 'plain error?'"

Whereas some states have adopted comparative negligence, with consequent several liability in all negligence cases,[2] Ohio seems to limit its application to those cases where "contributory negligence is asserted as a defense." (R.C. 2315.19(D), paragraph 1.) The issue then becomes, when does comparative negligence cease, and historic principles of joint and several liability commence?[3]

The legislation is inartfully drafted. It is possible to read the entire section to a conclusion that its provisions apply in *all* negligence actions with the consequent substantive conclusion that joint and several tortfeasors are to be liable only for their

proportion for the total damages. Subsection (A)(1) applies to "negligence actions" and is not limited in its language to cases where contributory negligence is asserted as a defense. Further, subsection (A)(2) establishes damage proportionality. Only in the next section, i.e., R.C. 2315.19(B), is contributory negligence drawn into the equation.

This is the reading essentially given to the statute by the Twelfth District Court of Appeals. In *Couch v. Thomas* (1985), 26 Ohio App. 3d 55, 497 N.E. 2d 1372, a passenger in an automobile driven by a co-worker was injured in an accident. Notwithstanding the co-worker was immune (the passenger received workers' compensation), the court held the third party defendant was only liable for his proportionate share of the damages to the passenger. It was never alleged that the passenger was contributorily negligent. Nevertheless, the court held:

"However, we feel that the underlying fundament of appellant's position, which is a request for an adjustment of his obligation to Couch based on his proportion of fault as compared to Thomas', has considerable merit. After all, if Thomas was not entirely responsible for the automobile collision and Couch's resultant injuries, he should not be in the position of being required to pay for Couch's damages in their entirety due to the immunity afforded Rowland by R.C. 4123.741. While there is no Ohio statute or case law directly on point, Thomas' predicament violates the spirit, if not the letter of R.C. 2315.19, which authorizes application of the concept of comparative negligence in Ohio, and the aforementioned R.C. 2307.31, which states that * * *[n]o tortfeasor is compelled to make contribution beyond his own proportionate share of the entire liability.* * * The fact that Thomas is obligated to pay more than his proportionate share of liability to Couch also violates his right to due process of law and his right to equal

protection under the law. It also offends our basic sense of equity and fair play.

\* \* \*

The above allocation of damages is fair to Thomas because he is thereby responsible only for the share of the damages occasioned by the percentage of negligence attributable to him, a result in keeping with public policy considerations behind the concepts of comparative negligence and contribution among joint tortfeasors. It avoids the clearly inequitable result which would have otherwise occurred in the case at bar whereby Thomas would have been completely responsible for Couch's damages regardless of his actual percentage of fault.

*Couch, supra,* at 56.

By contrast, the Sixth District Court of Appeals (per Judge Resnick) holds that even where the comparative negligence statute is initially invoked, several liability only applies if some contributory negligence is found. *Carney v. McAfee* (12/31/86), Erie App. No. CA-E-85-58, unreported. Accord, *Hurshman v. Baker* (6/2/88), Cuyahoga App. No. 53688, unreported; *Nice v. Murphy* (6/14/85), Carroll App. No. 501, unreported.

The Supreme Court has not directly answered the above questions. However, the court has favored us with *dicta* in a case where comparative negligence principles were applied where the jury found no one negligent. The Supreme Court found no reversible error:

"This case was litigated on the basis of contributory negligence, rather than comparative negligence as required by R.C. 2315.19. Thus, the case before us was not tried in accordance with *Wilfong, supra.*

"[3] However, this has no significance here. Like contributory negligence, the doctrine of comparative negligence, consistent with the provisions of R.C. 2315.19, is a defense to a claim for relief for negligence. Its application is triggered by the fact finder's determination that the defendant, as well as the plaintiff, was negligent". *Seeley v. Rahe* (1985), 16 Ohio St. 3d 25, 475 N.E. 2d 1271.

For the reasons above stated, I would not reach the merits of the comparative negligence assigned errors.

### CERTIFICATION OF CONFLICT

However, having ruled upon those merits, I believe the majority is bound to certify the record of this case to the Supreme Court for review and final determination pursuant to Ohio Constitution, Article IV, Section 3(B)(4), as in conflict with *Couch v. Thomas* (1985), 26 Ohio App. 3d 55. The public, bar and bench deserve no less. The majority assertion that *Couch* is contrary to law, p. 12, is no reason, even if correct, to deny certification.

### THE PLAIN ERROR QUESTION

Given the frequent caveats that the doctrine of plain error should be utilized with "utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice," *Cleveland Electric Illuminating Co. v. Astorhurst Land Co.* (1985), 18 Ohio St. 3d 268, 480 N.E. 2d 794, I find it astonishing that we ascribe plain error to a trial court that has proceeded in precisely the same way the court of appeals of another district has prescribed as appropriate, particularly where that other opinion (*Couch*) has not been reversed.[4]

How can it be seriously claimed that the trial court committed plain error when the Supreme Court had already ruled that the comparative negligence statute authorized damage allocation (including a nonremaining party to the action), in *Cincinnati Riverfront Coliseum v. McNulty Co.* (1986), 28 Ohio St. 3d 333, 504 N.E. 2d 415, where the jury found no contributory negligence. There, the coliseum sued eleven parties involved in the design and construction of a walkway which had deteriorated. By the time of trial only two defendants remained. The interrogatory, apportioning negligence, included "others involved," i.e., parties who were no longer active in the suit. Although there was no finding that the plaintiff-coliseum was negligent, the court approved the allocation of damages among the defendants, including those no longer involved.

The trial court submitted an interrogatory to the jury which instructed it to apportion damages among Riverfront, Clark, the city, McNulty Co. and "Others involved." Following the standards of comparative negligence that governed the resolution of the instant action at the trial level, the jury was required to specify the percentage of negligence "attributable to each party to the action" that directly and proximately cause Riverfront's losses. We find that the form and content of the interrogatory involved did not prevent a fair and complete apportionment of liability. The parties remaining in the controversy for trial were specifically named and those that had been dismissed were reasonably made subject to consideration for purposes of apportionment under the category of "others involved."

*Cincinnati Riverfront Coliseum, supra,* at 339. (Note: "the case was reversed and new trial ordered on other grounds.")

See also, *Schade v. Carnegie Body Co.* (1982), 70 Ohio St. 2d 207, 436, N.E. 2d 1001, holding no plain error where the trial court charged the jury on contributory negligence without objection of the plaintiff.

I would conclude that there was no plain error in this case.

Finally, the extreme, App. R. 12(B), remedy fashioned by the majority, depends for its integrity on a finding by the jury the majority also says should never have been made. (At. p. 13, fn 7, the majority finds error in instructing the jury to "*determine* the percentage of a non-party's [Barmet] negligence." Yet the percentage allocation as to Barmet and the other defendants is critical to its ultimate conclusion. Note that appellant does not challenge the judgments as to liability of other defendants.)

As a maximum, I would conclude that the appropriate remedy for the comparative negligence error is the granting of a new trial, with a certification of conflict to the Supreme Court.

---

[1] Note that the civil rules make no provisions for plain error, as do the Ohio Rules of Evidence, Evid. R. 103(D). This paradox prompted Chief Justice Celebrezze to state:

"Furthermore, even though there is a plain-error doctrine recognized in criminal cases by virtue of Crim.R. 52, there is serious doubt as to whether there is a parallel plain-error doctrine for civil cases. See Civ.R. 61. This court is therefore in a questionable position to adopt a plain-error rule the genesis of which would be outside the Rules of Civil Procedure." *Reichert v. Ingersoll* (1985), 18 Ohio St. 3d 220, 480 N.E. 2d 802.

[2] See 57B Am. Jur. 2d, Sec. 1140 *et seq.* for an overview of comparative negligence.

[3] This court agrees with the view taken by other commentators who have thoroughly analyzed the effect of R.C. 2315.19 on the traditional concept of joint and several liability. As aptly summarized in *Stearns v. Johns-Manville Sales Corp.* (N.D.Ohio Feb. 17, 1984), Case No. C 79-2088, unreported: "The commentators have read the wording of (A)(2) to mean what it says. In the article "Ohio's Comparative Negligence Statute: The Effect on Joint and Several Liability," 50 U.Cin.L.Rev. 342, 346 (1981), author Cynthia L. Summers states: 'On its face the Ohio Comparative Negligence Statute appears to vary [the Ohio contribution statutory assistance under R.C. 2307.31 and 32] by limiting each defendant's damages to his proportionate fault, establishing several liability. The language 'each person is liable* * *for a portion of the damages and the formula for apportioning damages

contradicts the theory of joint and several liability that each tort feasor is liable for the whole of the damage.' Author Schwartz's supplement to his "Comparative Negligence" text, at p. 120, in the section entitled "Joint and Several Liability of Joint Tortfeasors" states that 'the comparative negligence statutes of Kansas, Ohio, Vermont, Pennsylvania, New Hampshire and Louisiana explicitly abolish joint and several liability [emphasis added]." *Id.* at 24-5. *Onderko v. Richmond Mfg. Co.* (July 25, 1986), Trumbull App. No. 3472, unreported.
[4] When procedural, plain error is claimed in *criminal* appeals, we frequently overrule the claim, pointing out that the error was nothing more than a tactic. We refuse to let counsel "roll the dice."