OPINION
Defendant-appellant Stacy Heistand appeals from the August 21, 2000, Judgment Entry of the Fairfield County Court of Common Pleas, Domestic Relations Division.
 STATEMENT OF THE FACTS AND CASE
In August of 1998, an acknowledgment of paternity was filed indicating that Kyle Blake Heistand (DOB 8/10/98) is the natural child of appellant Stacy Heistand and appellee Nickolas McCoy. Thereafter, appellee, on November 2, 1998, filed a complaint in the Fairfield County Court of Common Pleas, Domestic Relations Division, seeking reasonable and liberal visitation and companionship rights with Kyle and requesting that child support be ordered. Appellee, in his complaint, also requested that he receive the income tax dependency exemption for Kyle and that Kyle's name be changed to Kyle Blake McCoy. An answer to appellee's complaint was filed by appellant on December 1, 1998. Appellant, in her answer, requested child support retroactive to Kyle's birth.
On February 19, 1999, appellee filed a "Motion for an Order of Parental Rights and Responsibilities." Appellee, in his motion, requested that he be designated Kyle's sole residential parent and legal custodian or, in the alternative, that the parties enter into a shared parenting plan. On the same date, appellee filed a motion for an order requiring psychological examinations to be performed on appellee, appellant, and on Kyle. Thereafter, on March 2, 1999, appellant filed a motion seeking the appointment of a Guardian Ad Litem and a separate motion requesting a psychological examination of appellant. Appellant, on such date, also filed a motion asking the court to enter a shared parenting plan or, in the alternative, to designate appellant's Kyle's residential parent and legal custodian.
Pursuant to an entry filed on March 5, 1999, the trial court ordered psychological evaluations of the parties and Kyle by Dr. Jolie Brams as well as a custody and companionship evaluation.
Thereafter, as memorialized in a May 20, 1999, Judgment Entry the trial court granted appellee companionship with Kyle and ordered appellee to pay child support in the amount of $679.15 plus poundage per month.
A trial before a Magistrate commenced on November 9, 1999, and concluded on November 29, 1999. The following evidence was adduced at the trial.
The first witness to testify at the trial in this matter was Dr. Jolie Brams, the licensed clinical psychologist who had conducted the psychological evaluations in this matter. Dr. Brams, whose lengthy report was admitted at the trial, testified that it would be in Kyle's best interest for appellee to be the residential parent. Appellee, Dr Brams testified, is a "psychologically normal individual" who shows "rather profound maturity, especially in terms of dealing with the situation over time, in terms of maintaining employment, obtaining an education." Trial Transcript at 14. According to Dr. Brams, appellee is "rational, reasonable . . . [and] affectionate" and is able to put Kyle's needs above his own. Trial Transcript at 15. Dr. Brams also testified that appellee, who has a college education and is employed as an engineer, understands the value of an education.
In contrast, at the trial in this matter, Dr. Brams testified that appellant "may be psychologically disturbed to the degree that she cannot look out for her son's best interests in a meaningful manner" and that appellant has "difficulty separating out her needs from those of her children."[1] Trial Transcript at 15. According to Dr. Brams, appellant is illogical, impulsive, selfish and has problems controlling her anger. Appellant, Dr. Brams testified, "expressed a lot of vindictiveness, a lot of sarcasm toward Mr. McCoy [appellee], which is not returned by Mr. McCoy." Trial Transcript at 16. According to the psychologist, appellant negated appellee's accomplishments. Dr. Brams opined that, based on appellant's "maladaptive personality characteristics," appellant would not provide appellee with adequate visitation, would not foster a relationship between appellee and his son, and would not provide Kyle with the proper life opportunities and values. During her testimony, Dr. Brams also stressed that appellant did not see the value of fathers in general and "saw no value in Kyle having a relationship with his father." Trial Transcript at 18. Dr. Brams also was critical of appellant's dysfunctional relationships with men, of her refusal to share Kyle's medical information or Kyle's picture with appellee, and of appellant's negative attitude towards education.
While there were numerous other witnesses who testified at trial, it is Dr. Bram's opinions that the Magistrate relied on in his February 4, 2000, Decision. The Magistrate, in such decision, recommended that appellee be designated Kyle's residential parent and that appellant be granted visitation. The Magistrate also recommended, in part, that appellant pay child support in the amount of $247.36 per month plus the processing charge and that Kyle's last name be changed from Heistand to McCoy. The Magistrate in his decision, further stated that "[a]ll motions and claims not disposed of by this Magistrate Decision are hereby dismissed." An entry approving and adopting the Magistrate Decision was filed by the trial court the same day.
Thereafter, appellant filed objections to the Magistrate's Decision to which appellee filed a memorandum in opposition. The trial court, as memorialized in a Judgment Entry filed on August 21, 2000, approved the Magistrate's Decision, finding that none of appellant's objections had merit. A Judgment Entry incorporating the Magistrate's Decision was filed on September 5, 2000. The trial court, in such entry, designated appellee Kyle's sole residential parent and legal custodian, changed Kyle's last name to McCoy, ordered appellant to pay child support and granted Local Rule 17 visitation to appellant. The trial court further ordered that all motions and claims pending between the parties that were not disposed of by the Magistrate's Decision be dismissed.
It is from the trial court's August 21, 2000, Judgment Entry that appellant prosecutes her appeal, raising the following assignments of error:
 ASSIGNMENT OF ERROR I THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO CONSIDER THE STATUTORY REQUIREMENTS OF OHIO REVISED CODE SECTION 3109.04(E)(1)(a) AND DETERMINE THAT A CHANGE OF CIRCUMSTANCES HAD OCCURRED PRIOR TO ALLOCATING PARENTAL RIGHTS TO THE APPELLEE.
 ASSIGNMENT OF ERROR II THE TRIAL COURT ABUSES ITS DISCRETION WHEN IT FAILS TO AWARD CHILD SUPPORT RETROACTIVE TO THE BIRTH OF THE CHILD WHEN PRAYED FOR.
 ASSIGNMENT OF ERROR III THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT PERMITTED TESTIMONY TO BE ADDUCED ON THE ISSUE OF DENIAL OF VISITATION, AND USED THAT TESTIMONY TO ADJUDICATE THE ULTIMATE ISSUE, WHEN AT THE TIME OF THE FILING OF THE MOTION FOR CHANGE OF CUSTODY NO SUCH EVIDENCE EXISTED.
 ASSIGNMENT OF ERROR IV A COURT ABUSES ITS DISCRETION WHEN IT FAILS TO APPOINT A GUARDIAN AD LITEM WHEN THE INTEREST OF THE PARENTS AND CHILD CONFLICT.
 ASSIGNMENT OF ERROR V A TRIAL COURT'S JUDGMENT THAT A MINOR CHILD'S LAST NAME BE CHANGED, IN A CUSTODY ACTION, IS VOID FOR LACK OF JURISDICTION WHEN A PARENTAGE ACTION HAS BEEN PREVIOUSLY ADJUDICATED.
 I
Appellant, in her first assignment of error, argues that the trial court abused its discretion when it failed to consider the statutory requirements of R.C. 3109.04(E)(1)(a) prior to designating appellant the residential parent. The Magistrate, in his February 4, 2000, Decision, which was adopted by the trial court, specifically made the following conclusions of law:
 Pursuant to Ohio Revised Code 3109.042, the mother is automatically the residential parent of a child born out of wedlock. However, after the father files a motion to allocate parental responsibilities, the court must treat the action as an original custody order, and not as a modification of custody.
 The court must look to the factors in Ohio Revised Code 3109.04(F) to determine the child's best interest and to determine residential parent or if there should be shared parenting.
(Emphasis added).
Appellant now specifically contends that since there was a modification of custody, the trial court erred in applying the "best interest" standard set forth in R.C. 3109.04(F)(1), et seq. rather than the change of circumstances standard of R.C. 3109.04(E)(1)(a).
Civ.R. 53(E)(3)(b) provides that "[a] party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule." See, e.g., Stamatakis v. Robinson (January 27, 1997), Stark App. No. 96CA303, unreported; Kademenos v. Mercedes-Benz of NorthAmerica, Inc. (March 3, 1999), Stark App. No. 98CA50, unreported. Appellant, in her reply brief in this matter, concedes that the issues raised in her first assignment of error were "not brought to the attention of the trial court below." Accordingly, pursuant to Civ.R. 53(E)(3)(b), appellant`s failure to object to the Magistrate's failure to consider the statutory requirements of R.C. 3109.04(E)(1)(a) constituted a waiver of such issue.
Appellant's first assignment of error is, therefore, overruled.
 II
Appellant, in her second assignment of error, contends that the trial court abused its discretion in failing to award child support retroactive to Kyle's birth despite the fact that appellant, in her answer to appellee's complaint, had requested the same. According to appellant, while the trial court, pursuant to a Judgment Entry filed on May 20, 1999, awarded appellant prospective child support, "[t]here existed some nine (9) months between the birth of the child [on August 10, 1998] and the award of child support, nine (9) months where no support was forthcoming from the Appellee."[2]
When reviewing matters concerning child support, this court employs an abuse of discretion standard. Booth v. Booth (1989), 44 Ohio St.3d 142. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983),5 Ohio St.3d 217.
Upon our review of the record, we find that the trial court did not abuse its discretion in failing to award child support retroactive to Kyle's birth since such decision was not arbitrary, unconscionable or unreasonable. During the trial in this matter, appellant testified that appellee "gave me money for the birth of Kyle. After Kyle was born, he brought items and put them on the porch." Trial Transcript at 261. Furthermore, Dr. Brams, in her report to the trial court, indicated that it did "not appear true" that appellee, prior to the court order, abdicated his responsibility in terms of financial support. Thus, there was competent and credible evidence in the record that prior to the May 20, 1999, Judgment entry, appellee was providing some financial support for Kyle.
Since, based on the foregoing, the trial court did not abuse its discretion in declining to award retroactive child support, appellant's second assignment of error is overruled.
 III
Appellant, in her third assignment of error, argues that the trial court committed plain error when it permitted testimony to be adduced on the issue of denial of visitation when, at the time of the filing of the Motion for Change of Custody, no such evidence existed. Appellant specifically contends that, while appellee filed his motion seeking custody of Kyle on February 19, 1999, alleging that it would be in Kyle's best interest for appellee to be designated the sole residential parent and legal guardian, "according to the Appellee's testimony, the alleged denial or alternations of the visitation did not occur until May of 1999 — being three months after he [appellee] had filed his motion for custody." In short, appellant maintains when appellee filed his motion for custody, no evidence existed at the time supporting the same.
In the case sub judice, trial counsel failed to object at trial to the admission of the above evidence regarding the denial of visitation. It is well established that errors arising in the trial court, which are not called to the court's attention at a time when the error could have been corrected or avoided, are waived, absent plain error. The Supreme Court of Ohio has stated:
 "The plain error doctrine provides for the correction of errors clearly apparent on their face and prejudicial to the complaining party even though the complaining party failed to object to the error at trial. Reichert v. Ingersoll (1985), 18 Ohio St.3d 220, 223, * * *. The plain error doctrine may be utilized in civil cases only with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. Cleveland Elec. Illum. Co. v. Astorhurst Land Co. (1985), 18 Ohio St.3d 268, 275 * * *." (Citations and parallel citations omitted.)
LeFort v. Century 21 — Maitland Realty Co. (1987), 32 Ohio St.3d 121,124.
Upon our review of the record in this matter, we are unable to justify invoking the doctrine of plain error in this case since there was no manifest miscarriage of justice in this case. Independent of appellee's alleged denial of visitation to appellant, there were, as noted by appellee in his brief, "myriad valid, credible, substantial reasons" for the court to conclude that it would be in Kyle's best interest for appellee to be granted custody. As set forth in detail in the statement of facts above, Dr. Brams testified at length that she "strongly believed that Kyle's best interest" would be served by having appellee the residential parent. Trial Transcript at 13. Among the reasons given by Dr. Brams for her opinion, both during her testimony and in her 30 page report, were appellant's psychological problems, appellant's negative attitudes towards education and towards the value of fathers, appellant's refusal to share Kyle's medical information with appellee, and appellant's dysfunctional and numerous relationships with men. Dr. Brams also stressed appellant's inability to place Kyle's needs ahead of her own and her "maladaptive" personality. In short, there was substantial, credible evidence independent of any denial of visitation supporting the trial court's award of custody of Kyle to appellee.
Appellant's third assignment of error is, therefore, overruled.
 IV
Appellant, in her fourth assignment of error, asserts that the trial court abused its discretion when it failed to appoint a Guardian Ad Litem to protect Kyle's interests. As is stated above, appellant, on March 2, 1999, filed a motion requesting that a guardian be appointed. Since such motion was never ruled on by the trial court, such motion is presumed to have been denied. Gosden v. Louis (1996), 116 Ohio App.3d 195.
We concur with appellee that appellant, by failing to object to the trial court's failure to appoint a Guardian Ad Litem, has waived her right to assert such issue as error on appeal. See, for example, Andersonv. Allison (June 26, 1998), Holmes App. No. 98-CA-3, unreported. However, nonetheless, we shall address the merits of appellant's argument.
Civ.R. 75(B)(2) provides for the appointment of a Guardian Ad Litem to a child when it is essential to protect the interests of the child. The appointment is within the sound discretion of the trial court.Pruden-Wilgus v. Wilgus (1988), 46 Ohio App.3d 13. An "abuse of discretion" connotes more than mere error; it implies that the court's action was unreasonable, arbitrary, or unconscionable. See Blakemore,supra.
We find that the trial court did not abuse its discretion in declining to appoint a Guardian Ad Litem in the case sub judice since such decision was not arbitrary, unconscionable or unreasonable. The trial court in this matter appointed Dr. Brams, a licensed clinical psychologist, to conduct psychological examinations of the parties herein and of Kyle. During her evaluations, Dr. Brams observed Kyle, who was approximately eleven months old at the time, "interacting one on one with both of his parents separately." Trial Transcript at 11. For such reason, we find that Kyle's interests were adequately protected by the trial court. Accordingly, the trial court's failure to appoint a Guardian Ad Litem was not an abuse of discretion.
Appellant's fourth assignment of error is overruled.
 V
Appellant, in her fifth assignment of error, argues that the trial court lacked jurisdiction to order that Kyle's last name be changed from Heistand to McCoy. According to appellant, since Kyle was given appellant's surname at birth, any future name change could only be accomplished in a probate court proceeding pursuant to R.C. 2717.01.
The Ohio Supreme Court, in Bobo v. Jewell (1988), 38 Ohio St.3d 330, syllabus, held as follows:
 Pursuant to R.C. 3111.13(C), a court of common pleas may determine the surname by which the child shall be known after establishment of the existence of the parent and child relationship, and a showing that the name determination is in the best interest of the child.
Clearly, based on the foregoing, the trial court in this matter had jurisdiction to order Kyle's last name changed from Heistand to McCoy.
Appellant's fifth assignment of error is, therefore, overruled.
Accordingly, the judgment of the Fairfield County Court of Common Pleas, Domestic Relations Division, is affirmed.
[1] Appellant also has a daughter from a previous relationship.
[2] As is stated above, the trial court, in its May 20, 1999, Judgment Entry, ordered appellee to pay child support in the amount of $679.15 plus poundage per month.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Fairfield County Court of Common Pleas is affirmed. Costs to appellant.
Edwards, J., Farmer, P.J. and Wise, J. concur.