OPINION *Page 2 
{¶ 1} Defendant The Heil Company appeals eight judgments of the Court of Common Pleas of Stark County, Ohio, entered in favor of plaintiff Sandra K. Ronske, Administratrix of the Estate of Robert R. Ronske, deceased. The court overruled Heil's pre-trial motion for summary judgment and its motions for directed verdict at the close of plaintiffs case and at the close of all evidence. The court entered judgment on a jury verdict in favor of Ronske. The court then overruled Heil's motions for judgment notwithstanding the verdict, for new trial, for remittitur, and for show cause.
 {¶ 2} Heil assigns ten errors to the trial court:
 {¶ 3} "I. THE TRIAL COURT ERRED IN DENYING HEIL'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT BECAUSE PLAINTIFF FAILED TO ESTABLISH THAT HEIL WAS LIABLE AS A COMPONENT PART MANUFACTURER.
 {¶ 4} "II. THE TRIAL COURT ERRED IN DENYING HEIL'S MOTIONS FOR DIRECTED VERDICT AND JUDGMENT NOTWITHSTANDING THE VERDICT BECAUSE PLAINTIFF FAILED TO ESTABLISH THAT ANY DEFECT EXISTED IN ANY OF THE COMPONENT PARTS WHEN THE COMPONENT PARTS LEFT HEIL'S CONTROL.
 {¶ 5} "III. THE JURY'S VERDICT IN FAVOR OF PLAINTIFF ON THE POST-SALE DUTY TO WARN CLAIM WAS NOT SUSTAINED BY THE WEIGHT OF THE EVIDENCE.
 {¶ 6} "IV. THE TRIAL COURT ERRED WHEN IT DENIED HEIL'S MOTION FOR SUMMARY JUDGMENT BECAUSE AS A MATTER OF LAW, ANY ALLEGED DEFECT WAS OPEN AND OBVIOUS. *Page 3 
 {¶ 7} "V. THE JURY VERDICT IN FAVOR OF PLAINTIFF WAS NOT SUSTAINED BY THE WEIGHT OF THE EVIDENCE BECAUSE ANY DANGER CREATED BY A RAISED DUMP BED WAS OPEN AND OBVIOUS.
 {¶ 8} "VI. THE PERVASIVE MISCONDUCT OF PLAINTIFF'S ATTORNEYS DENIED HEIL THE OPPORTUNITY FOR A FAIR TRIAL.
 {¶ 9} "VII. THE TRIAL COURT COMMITTED PLAIN ERROR BY PERMITTING THE PERVASIVE MISCONDUCT OF PLAINTIFF'S ATTORNEY TO IRREVOCABLY TAINT THE TRIAL.
 {¶ 10} "VIII. THE TRIAL COURT ERRED IN DENYING HEIL'S MOTION TO SHOW CAUSE.
 {¶ 11} "IX. THE TRIAL COURT ABUSED ITS DISCRETION BY NOT ORDERING A NEW TRIAL BECAUSE THE EXCESSIVE JURY AWARD WAS INFLUENCED BY PASSION AND PREJUDICE.
 {¶ 12} "X. IN THE ALTERNATIVE, HEIL IS ENTITLED TO A REMITTITUR OF THE JURY AWARD FOR LOSS OF SUPPORT."
 {¶ 13} The Heil Company's statement on appeal from the court's ruling on summary judgment, made pursuant to Loc. App. R. 9 (A), states the trial court's denial of the summary judgment was inappropriate as a matter of law.
 THE FACTS {¶ 14} Sandra Ronske brought this wrongful death product liability lawsuit after her husband Robert was killed on September 30, 2002. Decedent was beneath the raised dump bed of his 1978 dump truck when it fell, killing him. *Page 4 
 {¶ 15} Great Lakes Truck Equipment manufactured the dump truck in February or March 1978. At the time of the accident, the dump truck had a dump bed manufactured by Heil, a control lever in the cab manufactured by Heil, and a pump assembly including a spool valve manufactured by Heil.
 {¶ 16} At trial, Ronske called Heil's expert witness Ronald Gerding, as on cross examination. Gerding explained roughly how the mechanism works. The operator would start up the truck, engage the clutch, and move the power takeoff lever located in the cab. This connects the hydraulic system through the transmission. The operator can then use a second lever, the control lever, to raise and lower the bed.
 {¶ 17} The control lever operates rods going back to the pump value. When the linkage is moved by the control lever it raises a value or spool valve to raise the dump bed or lowers it to bring the dump bed down.
 {¶ 18} The dump bed assembly was installed according to Heil's instructions in the proper location according to the instruction manual Heil supplied. Heil conceded if someone made contact with the spool while the truck bed was elevated, it could cause the bed to lower. Ronske's theory of the case was decedent inadvertently bumped the spool while working on the truck, causing the dump bed to fall. Ronske's experts testified seven pounds of pressure on the spool would cause the bed to silently descend in four seconds.
 {¶ 19} Heil provided warning decals that cautioned whenever the body is in an elevated or raised position it must be securely propped or blocked so it cannot fall. The manual Heil furnished with the dump bed suggested using a railroad tie or five feet long six inch by six inch piece of wood inserted between the truck bed and the rails, or two *Page 5 
four by fours approximately five feet long placed vertically between the tires and blocked against the body understructure. In the alternative, the manual indicated Heil also manufactured support props which could be purchased separately.
 {¶ 20} Heil also argued the danger of working under an unsecured elevated dump bed was open and obvious. Ronske argued it was not open and obvious that if seven pounds of pressure were placed on the spool, the truck bed would fall, and Heil did not warn users of this specific danger.
 {¶ 21} Heil's assignments of error I, II, III, V, VI, VII, IX, and X all challenge the court's rulings on the motions for directed verdict, judgment notwithstanding the verdict, and new trial. For purposes of simplicity, we discuss the law regarding these motions in general before addressing the specific assignments of error.
DIRECTED VERDICT AND JUDGMENT NOTWITHSTANDING THE VERDICT
 {¶ 22} Civ. R. 50 (A) states in pertinent part:
 {¶ 23} "When a motion for directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come but to one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."
 {¶ 24} Civ. R. 50 (B) governs motions for judgment notwithstanding the verdict. It provides:
 {¶ 25} "Whether or not a motion to direct a verdict has been made or overruled and not later than fourteen days after entry of judgment, a party may move to have the *Page 6 
verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion; or if a verdict was not returned such party, within fourteen days after the jury has been discharged, may move for judgment in accordance with his motion. A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative. If a verdict was returned, the court may allow the judgment to stand or may reopen the judgment. If the judgment is reopened, the court shall either order a new trial or direct the entry of judgment, but no judgment shall be rendered by the court on the ground that the verdict is against the weight of the evidence. If no verdict was returned the court may direct the entry of judgment or may order a new trial."
 {¶ 26} The trial court may direct a verdict or enter judgment notwithstanding the verdict where reasonable minds can come to only one conclusion. In ruling on either of these motions, the court must construe the evidence in the light most favorable to the nonmoving party. The trial court must consider the legal sufficiency of the evidence, McLeod v. Mt. Sinai Medical Center (2006),166 Ohio App. 3d 647. Where there is substantial competent evidence upon which reasonable minds may reach different conclusions, the court must deny the motions, see Kreller Group, Inc. v. WFS Financial, Inc., 155 Ohio App.3d 14,2003-Ohio-5393, 798 N.E.2d 1179, citations deleted.
 {¶ 27} Appellate review of a ruling on a motion for directed verdict or a motion for judgment notwithstanding the verdict is de novo,Midwest Energy Consultants, L.L.C. v. Utility Pipeline, Ltd., Stark App. No. 2006CA00048, 2006-Ohio-6232.
 NEW TRIAL {¶ 28} Civ. R. 59 governs motions for new trial. It states in pertinent part: *Page 7 
 {¶ 29} "A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds:
 {¶ 30} (1) Irregularity in the proceedings of the court, jury, magistrate, or prevailing party, or any order of the court or magistrate, or abuse of discretion, by which an aggrieved party was prevented from having a fair trial;
 {¶ 31} (2) Misconduct of the jury or prevailing party;
 {¶ 32} (3) Accident or surprise which ordinary prudence could not have guarded against;
 {¶ 33} (4) Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice;
 {¶ 34} (5) Error in the amount of recovery, whether too large or too small, when the action is upon a contract or for the injury or detention of property;
 {¶ 35} (6) The judgment is not sustained by the weight of the evidence; however, only one new trial may be granted on the weight of the evidence in the same case;
 {¶ 36} (7) The judgment is contrary to law;
 {¶ 37} (8) Newly discovered evidence, material for the party applying, which with reasonable diligence he could not have discovered and produced at trial;
 {¶ 38} (9) Error of law occurring at the trial and brought to the attention of the trial court by the party making the application;
 {¶ 39} In addition to the above grounds, a new trial may also be granted in the sound discretion of the court for good cause shown. * * *"
 {¶ 40} In the recent case of Helfrich v. Mellon, Licking App. No. 06CA69, 2007-Ohio-3358, this court found when a party files a motion for a new trial because the *Page 8 
judgment is not sustained by the sufficiency of the evidence, the trial court must review the evidence presented at trial and weigh the sufficiency of the evidence and the credibility of the witnesses,Helfrich at paragraph 86, citing Rohde v. Farmer (1970),23 Ohio St. 2d 82. In reviewing a trial court's decision regarding a motion for new trial, we use the abuse of discretion standard, Sharp v. Norfolk Western Railway Company, 72 Ohio St. 3d 307, 1995-Ohio-224,649 N.E. 2d 1219. This court may not disturb a trial court's decision unless we find the decision was unreasonable, unconscionable, or arbitrary, Id., citingBlakemore v. Blakemore (1983), 5 Ohio St. 3d 217.
 PRODUCT LIABILITY {¶ 41} The seminal case in the area of product liability is Temple v.Wean United, Inc. (1977), 50 Ohio St. 2d 317, 4 O.O. 3d 466,364 N.E.2d 267. In Temple, the Ohio Supreme Court explained the role of component manufacturers in product liability cases. In Temple, the Ohio Supreme Court held "One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if (a) The seller is engaged in the business of selling such a product, and (b) It is expected to and does reach the user or consumer without substantial change in the condition in which it is sold. (2) The rule stated above applies although the seller has exercised all possible care in the preparation and sale of his product, and the user or consumer has not bought the product from or entered into any contractual relation with the seller. * * * (4) There is no duty to warn extending to the speculative anticipation of how manufactured components, not in and of themselves dangerous or *Page 9 
defective, can become potentially dangerous dependent upon their integration into a unit designed and assembled by another." Syllabus by the court.
 {¶ 42} In Temple, the Supreme Court found in order to recover under strict liability, the plaintiff must show there was a defect in the product manufactured and sold by the defendant, which existed at the time the product left the hands of the defendant. The defect must be the direct and proximate cause of the plaintiffs injury or loss,Temple at 321, citations deleted. The court found if the product which injured the plaintiff had undergone substantial change from the condition in which it left the defendant, then the defendant is not liable, Id.
 {¶ 43} The Supreme Court held a component part manufacturer's duty to warn does not extend to the speculative anticipation of how manufactured components, not in and of themselves dangerous or defective, could become potentially dangerous because of the way another party might integrate the component into a unit designed and assembled by another, Id. at 324.
 {¶ 44} In addition to strict liability, the Temple court discussed negligence. The obligation of the manufacturer or seller to give suitable warning of a dangerous propensity of a product is a rule fixing a standard of care, and any tort resulting from the failure to meet this duty is, in essence, a negligent act. The court found in Ohio, a manufacturer or vendor is negligent if he has knowledge of a latent defect which renders a product unsafe, but fails to provide a warning of the defect, Id. at 325, citations deleted. A manufacturer must use reasonable care under the circumstances to design a product so it is safe for the use for which it is intended, but the manufacturer is not required to make it accident proof or fool proof, Id. *Page 10 
 I, II, III {¶ 45} In the first three assignments of error, Heil argues the court should have directed a verdict or entered judgment not withstanding the verdict because Ronske failed to meet her burden of proof.
 {¶ 46} The trial court instructed the jury regarding manufacturers of component parts. The court stated: "The Heil Company manufactured a component part of the 1978 dump truck at issue in this case. Manufacturers of component parts are liable for defects in a completed project only if they either construct or assemble the completed product or significantly participate in its design. Therefore, in order to establish liability against the Heil Company, the plaintiff must prove by preponderance of the evidence that (1) the Heil Company assembled or installed the hydraulic dump bed on the 1978 Ford truck; or (2) the Heil Company significantly participated in the design of the 1978 Ford dump truck. If the plaintiff fails to establish either of these elements your verdict must be for the defendant. If the plaintiff has proven one of these elements by a preponderance of the evidence, you must consider whether the product was defective." Tr. Trans., Vol. 7, at 16.
 {¶ 47} The court instructed the jury regarding design defects: "The manufacturer of a product is liable for harm caused by a defect in design or formulation if, when the product left the control of the manufacturer, the foreseeable risks associated with its design or formulation outweighed the benefits associated with the design or formulation, or the product was more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner." Id at 17. *Page 11 
 {¶ 48} Heil argues Ronske did not prove Heil assembled or installed any part on decedent's truck. Heil also argues it did not participate in the design of the dump truck cab or chassis. Although it concedes it designed and sold the dump bed, Heil argues Great Lakes ordered the parts, chose the options, and installed Heil's components on the truck itself.
 {¶ 49} Ronske responds the evidence adduced at trial clearly showed Heil designed and manufactured the unguarded spool value, and included instructions to distributors on how to install the system. Heil did not integrate inexpensive and available safety devices, although it offered them as extras.
 {¶ 50} Ronske's expert testified in his opinion, the dump bed product as designed and manufactured by Heil was defective at the time it left Heil's control because the foreseeable risk associated with using it exceeded the benefits. The expert witness opined the system was defective because it was more dangerous than an ordinary consumer would expect, and a consumer's failure to block the bed with a railroad tie or some other material was foreseeable.
 {¶ 51} The jury completed interrogatories with their verdict. The jury found by a preponderance of the evidence the hydraulic dump bed system was defectively designed, and was defective because of inadequate post sale warnings or instructions. The jury found decedent did not misuse the hydraulic dump bed system or assume the risk of his death, and the jury found the hydraulic dump bed system had not been materially altered.
 {¶ 52} Heil also argues the record is completely devoid of evidence to support Ronske's argument it had a post sale duty to warn. Heil correctly sets out Ohio law. *Page 12 
The standard for determining the adequacy of a warning is whether the manufacturer took precautions a reasonable person would have taken in presenting its product to the public, Welch Sand Gravel, Inc. v. O K Trojan, Inc. (1995), 107 Ohio App. 3d 218, citing Crislip v. TCHLiquidating Company (1990), 52 Ohio St. 3d 251. The standard for determining the adequacy of the warning is identical in both strict liability and negligence claims, Welch Sand Gravel at 226. A warning is adequate if it reasonably discloses the inherent risks, and the product is safe when used as directed, Phan v. Presite Corporation
(1994), 100 Ohio App. 3d 195, citing Crislip at 255.
 {¶ 53} The court correctly instructed the jury about the duty to warn, see Tr. Trans. Vol. VII, at 22-24.
 {¶ 54} Ronske responds although Heil did issue warnings advising the user to use blocks or chucks when the truck bed was elevated, it did not warn that only seven pounds of pressure on the valve would cause the raised bed to descend noiselessly in four seconds. Ronske argued this was an inherent defect in the product of which Heil had been aware for years before it sold the spool valve used in decedent's truck. Although Heil furnished a general warning about the dump bed, it did not warn the user how easily the user could effectively and inadvertently bypass the lever controls located inside the cab and trigger the dump bed's descent.
 {¶ 55} Heil admitted it could have provided at least two safety devices, either one of which would eliminate or reduce the hazard associated with inadvertent contact with spool valve. One option was to include a locking mechanism on the control levers. Another option would be to include props or bracings to prevent the dump bed from *Page 13 
descending prematurely. In addition, the spool valve could have been shielded against inadvertent contact.
 {¶ 56} We find the evidence Ronske presented was legally sufficient to demonstrate Heil was liable as the designer and manufacturer of the component parts. We further find there was sufficient evidence presented from which a reasonable jury could conclude Ronske had proven her case by a preponderance of the evidence.
 {¶ 57} The first, second, and third assignments of error are overruled.
 IV V {¶ 58} In its fourth assignment of error, Heil argues it was entitled to summary judgment because as a matter of law any alleged defect in its product was open and obvious. The fifth assignment of error urges for the same reason, the jury's verdict is not sustained by the weight of the evidence.
 {¶ 59} Heil spent considerable time at trial demonstrating decedent knew he should never place himself under the dump bed unless it was properly braced. Certainly the general danger anyone beneath the dump bed would be injured if it fell is open and obvious. However, a reasonable jury could find the danger posed by the exposed and unguarded spool valve was not open and obvious.
 {¶ 60} The fourth and fifth assignments of error are overruled.
 VI {¶ 61} In its sixth assignment of error, Heil argues Ronske's attorneys committed misconduct to the extent it deprived the Heil Company of a fair trial. Heil lists four occasions it contends aroused the passion and/or prejudice of the jury and tainted its verdict. *Page 14 
 OPENING STATEMENT {¶ 62} Heil argues Ronske's counsel's opening statement contained three improper references. First, counsel repeatedly referred to the dump truck as a "death trap".
 {¶ 63} Heil did not object to this phrase.
 {¶ 64} Secondly, Ronske's counsel said "We will prove that twenty-five years before this truck and this bed was manufactured the Heil Company knew of and had safety devices which were inexpensive, easy to install and, most importantly easy for the consumer to use to protect themselves, but instead of placing life ahead of profits by simply spending a few dollars to put on these safety devices, the Heil Company chose the cheapest and most ineffective means to protect the consumers-caution labels, a warning label. And we'll discuss this more but this is the caution label (here counsel apparently pointed out the label to the jury) that was placed on the product by the Heil Company to protect consumers from deadly hazard and defects. Why did they choose this method? Because they wanted to fabricate a defense, ladies and gentlemen for their failure to use available safety devices which would have saved lives and to create the illusion that they were protecting their customers." (Tr. Trans., Vol. 2, Pgs. 41-42).
 {¶ 65} Heil did not object to this statement.
 {¶ 66} Thirdly, during opening statement plaintiff's counsel described what decedent was doing when the dump bed fell on him. Heil now argues counsel's remarks were pure speculation because there were no eye witnesses to the accident.
 {¶ 67} Heil did not object to the description of the accident. *Page 15 
 {¶ 68} Heil did not raise any allegations of impropriety in opening statement in its motion for new trial.
 CROSS EXAMINATION OF STEVEN GEMMER {¶ 69} At trial, Heil called witness Steven Gemmer, an instructor in industrial hydraulics who also works on hydraulic equipment and machinery. Gemmer testified he had probably taught over a thousand students in the years he conducted training classes for various companies including General Motors, Toyota, Nissan, Ford Visteon, and Chrysler, as well as the Timken Company. Decedent had worked for thirty years at the Timken Company prior to retiring.
 {¶ 70} Gemmer testified he began training classes for the Timken Company in 1995 or 1996. He testified during the course of his training classes, he became acquainted with decedent, who had attended Gemmer's hydraulic and lubrication classes. Gemmer also testified he did some work with decedent on several occasions when Timken was experiencing problems with some of its equipment.
 {¶ 71} Gemmer testified in his classes he stressed the importance of blocking or chucking suspended loads on hydraulic equipment. Gemmer testified decedent was present when this material was discussed. Gemmer also testified decedent had told him about his dump truck on many occasions, and decedent had repeatedly stated he did not take the proper precautions to block or chuck the bed when it was elevated. Gemmer indicated they had many conversations, perhaps more than ten.
 {¶ 72} On cross examination, Ronske highlighted certain portions of Gemmer's testimony about his background that were inaccurate or incomplete. Ronske questioned Gemmer regarding decedent's physical appearance, and established *Page 16 
Gemmer did not recall decedent had a scar on his face, the result of being shot while serving in the Vietnam War. Ronske then asked Gemmer about his personal feelings concerning lawyers and lawsuits, and Gemmer indicated he believed frivolous lawsuits against manufacturers had driven businesses out of the country.
 {¶ 73} On cross, Gemmer testified as soon as he heard decedent had died, he said words to the effect that he hoped decedent had not been killed under the bed of the dump truck.
 {¶ 74} Ronske challenged Gemmer's testimony he had repeated conversations in which decedent stated he did not take proper safety precautions when working on his dump truck. At one point, Gemmer testified he had spoken with decedent in April or May of 2001, whereupon Ronske informed Gemmer decedent had retired in June of 2000, and thus could not have had a conversation with Gemmer at the Timken Company in 2001.
 {¶ 75} Ronske's counsel asked Gemmer several times why he was testifying in this manner, and Gemmer replied he was telling the truth. Counsel then asked if he was being paid for his testimony and Gemmer replied he was not. Counsel then asked "how much have you received from either of these people or the Heil Company to come in and just bald face lie to this jury". Gemmer answered, "One, I'm not bald face lying; number two I did not receive a dime, it's actually costing me." Tr. Trans., Vol. 5, at 406.
 {¶ 76} Heil did not object to this testimony, but on redirect, asked whether anyone had offered him any type of reward for his testimony, and Gemmer testified no one had. After the jury was excused, Heil ask the court to report Ronske's counsel for a violation of the Code of Ethics for accusing opposing counsel of bribing a witness. The *Page 17 
next morning, Heil called a worker from the Timken Company to testify about Gemmer's reaction when he learned of the decedent's death.
 {¶ 77} Heil never objected to the questioning, asked for a curative instruction, or moved for a mistrial.
 IMPROPER CLOSING ARGUMENT {¶ 78} Heil also urges Ronske's counsel's closing argument was improper, when he described what counsel believed decedent would say to the jury if he could. Counsel again described the accident from decedent's point of view, and the court sua sponte intervened to call both counsel to the bench. The court informed Ronske's counsel this argument about the circumstances of the accident was not supported by the facts presented at trial. After considerable discussion, Ronske's counsel assured the court he would tell the jury this was his own theory about the accident, and counsel reminded the court of some of the testimony that had been presented which supported Ronske's version of the accident. The court then told Heil's counsel it would note its objection, but would permit Ronske to finish her rebuttal argument. The court cautioned counsel it would not permit any inappropriate closing argument.
 {¶ 79} It was the court, not Heil's counsel, who intervened during this "from the grave" argument.
 MOTIONS IN LIMINE {¶ 80} Finally, Heil argues opposing counsel repeatedly questioned its witnesses about other lawsuits without establishing the other incidents were similar to the one at bar, and repeatedly made reference to evidence the court had excluded. *Page 18 
 {¶ 81} The court sustained objections to some of Ronske's questions and remarks, and ordered the jury to disregard them. We must presume juries follow the court's instructions, see Pang v. Minch (1990),53 Ohio St. 3d 186, 559 N.E. 2d 1313.
 {¶ 82} Regarding Ronske's opening statements, the record shows Heil made no objection to any of opposing counsel's remarks, and did not raise this as a ground for a new trial in its motion. Prior to opening statements, the court correctly instructed the jury the attorneys are not witnesses and the jury must not consider as evidence any statement of an attorney made during the trial, Tr. Trans., Vol. 2, Pg. 34. The court explained to the jury opening statements of counsel are descriptions of what each side believes the evidence will be in the case, but counsels' statements themselves are not evidence, Tr. Trans., Vol. 2, Pg. 39.
 {¶ 83} In its judgment entry overruling the motion for a new trial, the court addressed most of the issues raised supra, with the exception of the opening statement. In particular, the court quoted Gemmer's cross-examination at some length, and found Heil did not object to the cross-examination, nor did it move for a mistrial or even ask for a curative instruction from the court. Instead, Heil's counsel chose to re-direct the witness and to request the court report Ronske's counsel for an ethical violation. The court found Heil's counsel did not object or move for a mistrial the following morning, but instead elected to call another witness to rehabilitate Gemmer. The court quoted the Ohio Supreme Court in Jones v. Macedonia-Northfield Banking Company (1937),132 Ohio St. 341, "Utterances of counsel while evidence is being adduced, whether consisting of comments on the evidence or offensive and personal remarks, are improper and, if prejudicial and not waived, constitute reversible error." Judgment entry *Page 19 
at page 6. The court found counsel had chosen to rehabilitate Gemmer rather than lodging an objection, seeking a curative instruction from the court, or moving for mistrial. We find the record clearly supports the court's findings. The court permitted Heil to call a witness not on its original witness list in order to confirm the challenged portion of Gemmer's testimony, which is what Heil requested.
 {¶ 84} Regarding the "from the grave" final argument, the court noted Heil did not object and the court sua sponte intervened to ensure the jury was not misled. The court found it must afford counsel great latitude in closing statements, and asserted "where gross and abusive conduct occurs, the trial court is bound, sua sponte, to correct the prejudicial effect of counsel's misconduct," Judgment entry of Nov. 20, 2006, page 7, citing Snyder v. Stanford (1968), 15 Ohio St. 2d 31, 37. The court found while the argument was calculated to appeal to the jury's emotions, there was testimony elicited at trial, to which Heil did not object, which supported the closing argument.
 {¶ 85} Although there were no eyewitnesses to the accident, decedent's daughter, who discovered his body, testified about the evening in question and the coroner's investigator testified at some length about the position of decedent's body and the tools found at the scene.
 {¶ 86} The court also found the issue of other incidents has been "vigorously litigated" prior to trial and the court had made specific rulings as to what was admissible. The court allowed Ronske's expert to testify regarding alternative designs not previously produced by the expert or exchanged during discovery, because the court gave Heil the opportunity to cross-examine the witness prior to trial. *Page 20 
 {¶ 87} We find the record fully supports the court's reasoning. The sixth assignment of error is overruled.
 VII {¶ 88} In its seventh assignment of error, Heil argues the court committed plain error in allowing the alleged misconduct outlined supra.
 {¶ 89} Heil concedes it did not object to many of the incidents of alleged misconduct it now assigns as error, but cites us to Toledo St.Louis Western Railway Co. v. Burr Jeakle (1910), 82 Ohio St. 129, wherein the Supreme Court found the prejudicial effect of counsel's statements regarding settlement offers is so great it cannot be cured by sustaining an objection and giving a cautionary instruction, because it leaves the jury with the impression the defendant has acknowledged liability. The court found a new trial may be the only cure for the error.
 {¶ 90} In Burr Jeakle, opposing counsel objected to the statement, and the court gave a curative instruction. The case does not stand for the proposition it is unnecessary to object, ask for a curative instruction, and move for a mistrial.
 {¶ 91} Here the trial court observed the witnesses and all counsel and determined Heil made a strategic decision on how to pursue the matter. The court allowed the matter to proceed only after discussions immediately after Gemmer testified, and again the following day after tempers had cooled somewhat. Heil's strategy to rehabilitate Gemmer was apparently unsuccessful, and Heil should not get a "second bite at the apple".
 {¶ 92} Errors not brought to the court's attention cannot be raised for the first time on appeal except under the Doctrine of Plain Error,State v. Woods, Summit App. *Page 21 
No. 22268, 2005-Ohio-2409, paragraph two, citations deleted. Heil argues in spite of its failure to object, the trial court should have intervened sua sponte. In fact, the court did exactly that in Ronske's closing argument.
 {¶ 93} Failure to timely advise a trial court of possible error, by objection or otherwise, generally results in a waiver of the issue for purposes of appeal. See Gallagher v. Cleveland Browns Football Co.
(1996), 74 Ohio St.3d 427, 436-437, 659 N.E.2d 1232, 1240; Buchman v.Wayne Trace Local School Dist. Bd. of Education (1995),73 Ohio St.3d 260, 271, 652 N.E.2d 952, 961.
 {¶ 94} In Goldfuss v. Davidson, 79 Ohio St. 3d 116, 1997-Ohio-401,679 N.E.2d 1099, the Supreme Court explained, "Although in criminal cases `[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court,' Crim. R. 52(B), no analogous provision exists in the Rules of Civil Procedure. The Plain Error Doctrine originated as a criminal law concept. In applying the Doctrine of Plain Error in a civil case, reviewing courts must proceed with the utmost caution, limiting the Doctrine strictly to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceedings. Schade, 70 Ohio St.2d at 209, 24 O.O.3d at 317,436 N.E.2d at 1003; LeFort v. Century 21-Maitland Realty Co. (1987),32 Ohio St.3d 121, 124, 512 N.E.2d 640, 643; Cleveland Elec. Illum. Co. v. AstorhurstLand Co. (1985), 18 Ohio St.3d 268, 275, 18 OBR 322, 327-328,480 N.E.2d 794, 800." Goldfuss at 121, emphasis sic. *Page 22 
 {¶ 95} We note Judge Sarah Lioi presided over this trial. Judge Lioi is an experienced and highly regarded judge who has recently been elevated to the federal bench. It has never been implied she tolerated impropriety or rudeness in her courtroom. The record before us clearly indicates she conducted the trial with impartiality and professionalism. She proceeded only after assuring herself Heil's counsel had chosen how it wished to proceed. She unambiguously found Heil made strategic choices in dealing with the issues herein and her well-reasoned judgment of November 20, 2006, cited supra, demonstrates she made no errors, plain or otherwise.
 {¶ 96} The seventh assignment of error is overruled.
 VIII {¶ 97} Heil moved the court for a Show Cause Order relating to Ronske's counsel's accusation Heil or its counsel bribed Gemmer to testify untruthfully. The court agreed with Heil there was no evidentiary support for the bribery accusation, and did not condone it. In fact, the court found the line of questioning was delivered in a very dramatic, acrid, and accusatory manner, and an immediate objection or motion for mistrial would have been appropriate. The court found a motion to show cause was not a cure or substitute. We agree. Heil did not ask the court for any relief except for permission to call a person not on its witness list to rehabilitate Gemmer's testimony. Having made the decision to counterattack in this way, Heil cannot now seek to take a different route. The trial court is in the best position to determine whether its orders were obeyed, and this court will not second-guess its decision.
 {¶ 98} The eighth assignment of error is overruled. *Page 23 
 IX X {¶ 99} Heil argues the jury award was excessive and demonstrates the jury was influenced by passion and prejudice. Heil argues the court should have granted a new trial or remitted the jury award. The court dealt with this argument in overruling the motion for new trial, citingSheets v. Norfolk S. Corp. (1996) 109 Ohio App.3d 278, 671 N.E.2d 1364: "In determining whether passion or prejudice affected a jury's damage award to the point of necessitating a new trial, a reviewing court must consider the amount of the award and whether the damages were induced by (1) incompetent evidence, (2) misconduct by the court or counsel at trial, or (3) any other action at trial which may reasonably be said to have swayed the jury. Shelton v. Greater Cleveland Regional TransitAuth. (1989), 65 Ohio App.3d 665, 682, 584 N.E.2d 1323, 1334; Loudy v.Faries (1985), 22 Ohio App.3d 17, 19, 22 OBR 52, 54, 488 N.E.2d 235,237. In addition, even if the verdict in question was not influenced by passion or prejudice, a trial or reviewing court may reduce the verdict by remittitur if it is excessive and unwarranted by the evidence presented. Cox v. Oliver Machinery Co. (1987), 41 Ohio App.3d 28,534 N.E.2d 855." Judgment Entry of November 20, 2006, Pgs. 9-10.
 {¶ 100} The Sheets court found "Upon review of the record, we are unable to conclude that the jury verdict was the product of passion or prejudice or manifestly excessive in light of the evidence presented. R.C. 2125.02 provides that in a wrongful death action, compensatory damages may be awarded for losses such as loss of support from the decedent's earning capacity, loss of services, loss of society, loss of consortium, loss of companionship as well as for mental anguish incurred by surviving parents. While some of the damages incurred by the estate of Tonya Sheets such as *Page 24 
funeral expenses and property damage are easily quantifiable, damages for the loss of a ten-year-old girl are not. See Betz v. Timken MercyMed. Ctr. (1994), 96 Ohio App.3d 211, 644 N.E.2d 1058. Therefore, we will not disturb the jury's damage award, a decision which `is so thoroughly within the province of the jury * * *.' Moskovitz v. Mt.Sinai Med. Ctr. (1994), 69 Ohio St.3d 638, 655, 635 N.E.2d 331, 345."
 {¶ 101} The trial court here found in light of the evidence presented, and in spite of any inappropriate behavior, the jury's verdict was not excessive. For purposes of appellate review, a new trial granted on the basis of an excessive judgment is the equivalent of a new trial granted because the judgment is not sustained by the weight of the evidence pursuant to Civ. R. 59(A)(6), see, e.g. Brady v. Miller, Montgomery App. No. 19723, 2003-Ohio-458, ¶ 12 ("a motion for remittitur challenges the weight of the evidence"), citing Menda v. Springfield Radiologists,Inc., Clark App. No. 2001-CA-91, 2002-Ohio-6785; Schafer v. RMSRealty (2000), 138 Ohio App.3d 244, 257-258. Thus, we review the decision under the abuse of discretion standard. Menda, ¶ 18.
 {¶ 102} Sandra Ronske, decedent's widow, testified about the family's financial situation before and after decedent's death. The record does not support Heil's argument there was no evidence of loss of support.
 {¶ 103} Our review of the record leads us to conclude the court correctly stated the law, and did not abuse its discretion in overruling the motion for new trial or remittitur.
 {¶ 104} The ninth and tenth assignments of error are overruled. *Page 25 
 {¶ 105} For the foregoing reasons, the judgments of the Court of Common Pleas of Stark County, Ohio are affirmed.
Gwin, P.J., Hoffman, J., and Delaney, J., concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgments of the Court of Common Pleas of Stark County, Ohio are affirmed. Costs to The Heil Company. *Page 1