[Cite as *Curatolo v. Clay*, 2011-Ohio-3226.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

YVONNE CURATOLO

      Plaintiff-Appellant

-vs-

RICHARD CLAY, ET AL.

      Defendants-Appellees

JUDGES:
Hon. William B. Hoffman, P.J.
Hon. Julie A. Edwards, J.
Hon. Patricia A. Delaney, J.

Case No. 2010CA00037

O P I N I O N

CHARACTER OF PROCEEDING:      Appeal from the Stark County Common
Pleas Court, Case No. 2007CV05301

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      June 27, 2011

APPEARANCES:

For Plaintiff-Appellant

H. ALAN ROTHENBUECHER
JAY E. KRASOVEC
Schottenstein, Zox & Dunn Co., LPA
US Bank Centre at Playhouse Square
1350 Euclid Avenue, Suite 1400
Cleveland, Ohio 44115

For Defendant-Appellant

ERIC J. WILLIAMS
Pelini, Campbell, Williams & Traub LLC
8040 Cleveland Avenue NW - Suite 400
North Canton, Ohio 44720

*Hoffman, P.J.*

{¶1} Plaintiff-appellant Yvonne Curatolo appeals the January 20, 2010 Judgment Entry of the Stark County Court of Common Pleas entering judgment in favor of Defendant-appellee Richard Clay.

STATEMENT OF THE FACTS AND CASE

{¶2} On December 28, 2003, Appellant Yvonne Curatolo entered into a commercial lease agreement with Merilyn E. Clay, as Trustee of the Merilyn E. Clay Trust, to rent a retail establishment for the sale of antiques and collectibles. Appellant opened an antique and art gallery in the retail space. The retail store occupied the upper and lower levels of the building.

{¶3} On February 16, 2005, Merilyn E. Clay passed away and Appellee Richard W. Clay[1] became the successor trustee of the Merilyn E. Clay Trust

{¶4} Appellee filed two separate forcible entry and detainer actions against Appellant in the Massillon Municipal Court for failure to pay rent as required by the lease agreement. The Massillon Municipal Court ordered Appellant evicted from the premises.

{¶5} An initial set-out of Appellant's possessions from the lower level of the building took place on September 5, 2005. During the set-out, Appellant maintains the bailiff failed to supervise removal of Appellant's property. Appellee and others on his behalf removed Appellant's possessions from the lower level of the building, and set

---

[1] Appellee Richard Clay's wife, Betsy Clay, was originally named a party defendant in the within action. At the close of evidence, the trial court directed a verdict in her favor. Appellant has not assigned the same as error. Therefore, Richard Clay is the sole Appellee herein.

them outside.  Appellant alleges they haphazardly spread the items over the yard and surrounding building.  She maintains when she went to recover the items, they were damaged and broken.

{¶6}  Appellant further asserts Appellee removed two antique soda machines from the lower level of the retail store.  The soda machines were moved outside, against the building's exterior wall, next to the doors on the lower level.  The next morning the machines were gone.

{¶7}  The Massillon Municipal Court ordered Appellant vacate the remainder of the premises by December 28, 2005.  Appellant maintains she arranged for a moving company and auction house to assist in the removal of her items; however, the moving company cancelled just prior to the set-out.  Appellant maintains, upon her arrival to the premises, her items were being dumped onto the gravel driveway, including vintage clothing, fragile ceramics and art work, antique furniture, lamps and other collectibles.  Appellant maintains many of the items were broken and damaged as a result.

{¶8}  Appellant filed the within action asserting claims of negligence and conversion.  Following a jury trial, judgment was entered in favor of Appellant on the conversion claim for $4500.00, but the jury found both parties were contributorily negligent in their handling of Appellant's property.  As a result, the jury assigned percentages of negligence with Appellant being found more negligent than Appellee.  The jury found Appellant sixty-seven percent negligent.

{¶9}  The trial court subsequently denied Appellant's motions for judgment nothwithstanding the verdict and/or for a new trial.

{¶10}  Appellant now appeals, assigning as error:

**{¶11}** "I. THE TRIAL COURT'S INSTRUCTION ON THE AFFIRMATIVE DEFENSE OF ABANDONMENT WAS IMPROPER AS APPELLEES WAIVED THIS AFFIRMATIVE DEFENSE AND, REGARDLESS, THE INSTRUCTION ITSELF WAS AN INACCURATE STATEMENT OF LAW.

**{¶12}** "II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY DENYING APPELLANT'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT OR NEW TRIAL.

**{¶13}** "III. THE TRIAL COURT'S INSTRUCTION ON THE CONVERSION CLAIM WAS AN INACCURATE STATEMENT OF LAW.

**{¶14}** "IV. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY GRANTING APPELLEES' MOTION IN LIMINE EXCLUDING THE TESTIMONY OF APPELLANT'S PROFFERED DAMAGES EXPERTS.

**{¶15}** "V. THE TRIAL COURT ERRED IN ADMITTING EVIDENCE OF APPELLANT'S TWO PRIOR MISDEMEANOR CONVICTIONS AND HER PRIOR LITIGATION WITH ALLSTATE.

**{¶16}** "VI. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FINDING IN FAVOR OF APPELLEES ON THE NEGLIGENCE CLAIM GIVEN THE COURT'S JURY INSTRUCTION ON THE DUTY OF A LANDLORD IN A NEGLIGENCE CONTEXT.

**{¶17}** "VII. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY PROVIDING AN INCOMPLETE JURY INSTRUCTION ON THE NEGLIGENCE CLAIM.

{¶18} "VIII. THE CONTRIBUTORY NEGLIGENCE FINDING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN THAT THE JURY DETERMINED APPELLEES WERE THE PROXIMATE CAUSE OF MS. CURATOLO'S DAMAGES."

I.

{¶19} In the first assignment of error, Appellant asserts the trial court erred in instructing the jury as to the affirmative defense of abandonment. Specifically, Appellant maintains Appellee waived the defense by failing to raise it in the pleadings or to amend the pleadings accordingly.

{¶20} Ohio Civil Rule 15(B) reads,

{¶21} "**(B) Amendments to conform to the evidence**

{¶22} "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment. Failure to amend as provided herein does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence."

**{¶23}** Appellant does not cite to an objection made in the record to Appellee's raising the issue of abandonment during trial on the grounds that it was not raised in the pleadings. Neither does this Court find an objection in the record. Accordingly, we find the issue of abandonment was tried by the implied consent of the parties. We find Appellee impliedly and directly raised the issue of abandonment, during trial on numerous occasions. Accordingly, pursuant to Civil Rule 15(B) we find Appellee did not waive the affirmative defense, and the trial court properly included an instruction on abandonment in its instructions to the jury.

**{¶24}** Appellant next argues the trial court's abandonment instruction was incomplete and failed to identify Appellee's affirmative duty to prove Appellant's intent to abandon the property.

**{¶25}** The trial court instructed the jury as follows:

**{¶26}** "Abandonment.

**{¶27}** "In order to abandon property, the owner must unequivocally relinquish the rights to it so that the owner's conduct amounts to a virtual throwing away or a total disregarding of the property. If a tenant movies [sic] out of the residence, but leaves some of their property behind in the rental property, the property left behind is deemed to been abandoned."

**{¶28}** Tr. at 749.

**{¶29}** The test to be applied to the trial court's decision to give a certain jury instruction is one of abuse of the court's discretion. *Walker v. Conrad* 2004-Ohio-259. Upon review, the trial court did not abuse its discretion in the instruction given. Appellant's first assignment of error is overruled.

II.

{¶30} In the second assignment of error, Appellant argues the trial court erred in denying her motion for judgment notwithstanding the verdict.

{¶31} When ruling on a motion for judgment notwithstanding the verdict, a trial court applies the same test as in reviewing a motion for a directed verdict. *Ronske v. Heil Co.,* Stark App. No.2006-CA-00168, 2007-Ohio-5417. See also, *Pariseau v. Wedge Products, Inc.* (1988), 36 Ohio St.3d 124, 127, 522 N.E.2d 511. "A motion for judgment notwithstanding the verdict is used to determine only one issue i.e., whether the evidence is totally insufficient to support the verdict." *Krauss v. Streamo,* Stark App. No.2001 CA00341, 2002-Ohio-4715, paragraph 14. See, also, *McLeod v. Mt. Sinai Medical Center* (2006), 166 Ohio App.3d 647, 853 N.E.2d 1235, reversed on other grounds, 116 Ohio St.3d 139, 876 N.E.2d 1201. Neither the weight of the evidence nor the credibility of the witnesses is a proper consideration for the court. *Posin v. A.B.C. Motor Court Hotel, Inc.* (1976), 45 Ohio St.2d 271, 275, 344 N.E.2d 334. See, also, Civ.R. 50(B); and *Osler v. Lorain* (1986), 28 Ohio St.3d 345, 347, 504 N.E.2d 19. In other words, if there is evidence to support the nonmoving party's side so that reasonable minds could reach different conclusions, the court may not usurp the jury's function and the motion must be denied. *Osler,* supra.

{¶32} Appellate review of a ruling on a motion for judgment notwithstanding the verdict is de novo. *Midwest Energy Consultants, L.L.C. v. Utility Pipeline, Ltd.,* Stark App. No.2006CA00048, 2006-Ohio-6232; *Ronske v. Heil,* supra.

{¶33} In reviewing a trial court's decision regarding a motion for new trial, we apply the abuse of discretion standard. *Sharp v. Norfolk & Western Railway Company,*

72 Ohio St.3d 307, 1995-Ohio-224, 649 N.E .2d 1219. This Court may not disturb a trial court's decision unless we find the decision was unreasonable, unconscionable, or arbitrary. *Id.* Appellant argues the trial court erred in denying her motion for judgment notwithstanding the verdict or her motion for a new trial as reasonable minds could conclude the amount of recovery awarded to her on the conversion claim was unjustly low given the evidence.

**{¶34}** At trial, Appellant provided a detailed report accounting for the alleged damages to her items, which totaled $826,604. That amount was for the damages resulting from the December 2005 set-out. In addition, she alleged damages in the amount of $59,125 resulting from the September 2005 set-out.

**{¶35}** Appellant's motion for JNOV concedes the $4,500 award was likely the amount awarded for the conversion of one soda machine. The jury was given an itemized list of damages, and were to determine which damages resulted from negligence and which resulted from conversion. The damages award did not stem from a calculation of a percentage of negligence attributed to each party; rather, correlates to an award for the conversion of one item, the antique soda machine. We find the trial court did not err in overruling Appellant's motion for JNOV or abuse its discretion in denying the motion for new trial.

**{¶36}** Appellant's second assignment of error is overruled.

III.

**{¶37}** Appellant's third assignment of error argues the trial court abused its discretion in instructing the jury as to the conversion claim. Specifically, Appellant argues the trial court's instruction was an inaccurate statement of the law.

**{¶38}** The trial court instructed the jury:

**{¶39}** "Plaintiff is additionally alleging conversion by the defendant of the plaintiff's property. The action of conversion of personal property is based on the wrongful possession by one party of the property of another. It is the wrongful taking of the property that gives the right of action to the owner of the property against the wrongdoer. It is not necessary for the party taking wrongful possession of the property to assert absolute ownership of it in order to give the owner the right to an action for conversion. If you find from the greater weight of the evidence that the plaintiff was the owner of the property in question and entitled to the immediate possession thereof, and was deprived of that possession by an unauthorized act of the defendant, or by the exercise of dominion over the property inconsistent with the right of possession of the plaintiff, it is a conversion of the property. Any distinct act of dominion wrongfully exerted over one's property in denial of his right, or inconsistent with it, is a conversion."

**{¶40}** Tr. at 750-751.

**{¶41}** Upon our review of the record, Appellant did not object to the trial court's instruction as given, nor does Appellant cite to an objection in the record. Furthermore, we find the trial court's instruction on conversion does not amount to an abuse of discretion.

**{¶42}** The third assignment of error is overruled.

IV.

**{¶43}** Appellant's fourth assignment of error asserts the trial court erred in granting Appellee's motion in limine excluding the testimony of Appellant's proffered damages experts.

**{¶44}** Evidence Rule 702 provides,

**{¶45}** "A witness may testify as an expert if all of the following apply:

**{¶46}** "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

**{¶47}** "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

**{¶48}** "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:

**{¶49}** "(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;

**{¶50}** "(2) The design of the procedure, test, or experiment reliably implements the theory;

**{¶51}** "(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result."

**{¶52}** As a general rule the admission or exclusion of expert testimony is within the sound discretion of the trial court. The trial court permitted Appellant herself to give her opinion in terms of the value of items allegedly damaged by Appellee. Of significance, Appellant herself did not dispute the items subsequently suffered damage while in storage. The trial court stated on the record,

**{¶53}** "And I'll tell you where I'm at. I had the opportunity to review the depositions that were taken of these experts. And, you know, I'll give you my thoughts. I, I'm not going to have, allow them to testify in this case. And I'm going to read those reasons on the record from the depositions that I've taken and I'll start with Steven Walker.

**{¶54}** "The biggest concern I have on both these experts is these are damages that apparently are alleged to have occurred in the year 2005. I believe December of 2005. We are now almost in October of 2008 (sic).

**{¶55}** "There is no testimony from Mr. Walker that he even saw any of this information in 2005. He's never testified as an expert before. He didn't see any of these items in 2005. He's trying to recreate values three years later.

**{¶56}** "He has indicated in his deposition he has not looked at the collection until three months ago. In his deposition he indicates that most of his values are based on the plaintiff's list of her value of the inventory, which I think is very consistent for all the plaintiff's and defendant's experts, as well.

**{¶57}** "Never saw the property while it was at the Obsessions store, never saw the property at Butterbridge. I'm a little concerned. He has no notes, I don't even know how he came with his calculations. Apparently there is no notes. He says he has a photographic memory. He has no license or certificate. Most of his experience of selling materials on the secondary market on-line. Ah, he doesn't have any notes, but said he provided the information to the attorney over the phone. Ah, I just don't see how that, in fairness, can be, ah, admitted in fairness to the defense in this case.

**{¶58}** "As to Jason Adams, it's the same ruling.  Ah, he's never testified as an expert.  He's actually more of an antique dealer.  He's never looked at this collection until three or four months ago.  Cannot give us any value at 2005, which is, understanding that this lawsuit is being filed, why there was no expert analysis in 2005 that could determine the damage or list of damage on the things, there is no license or certificate.  Again, doesn't appear to be any report, no written notes.  If I understood his deposition, he hasn't even seen the final compiled list.  He was not present at any set off.  He has no knowledge as to how any of the items that she claims were damaged were actually damaged.  Doesn't know how the items were mishandled.  Not familiar with the efforts that the plaintiff took to even protect the property.  Not familiar with how long items sat out in the elements following the setouts, which is important from what I'm hearing in the facts of this case.

**{¶59}** "Now, as to plaintiff, if I let this information in, and they make a directed verdict, I would have to grant it under the law.  At least that's my viewpoint.  On the other hand, I want you to have your day in court and I think the person who is best suited to provide this testimony is the plaintiff, herself.  And if the plaintiff testifies to these values, ah, I know you have issues on cross-examination, obviously, but I think you get past a directed verdict and I think that's why that testimony is critical.  So I don't want you to think I'm taking a hard-line, that I'm trying to take away your case, but in all honesty - - and at least I'm telling you this beforehand, because I want to be fair to everybody in this room.  If you didn't call the plaintiff for that aspect and put these two experts on, I don't know how you'd get past a directed verdict.  So that's my ruling.

{¶60} "If anybody wants to - - which also means your experts are not going to be permitted otherwise."

{¶61} Tr. at 119-123.

{¶62} Upon review of the record and the rationale offered by the trial court in excluding Appellant's witnesses, we do not find the trial court abused its discretion in granting the motion in limine.

{¶63} The assignment of error is overruled.

V.

{¶64} In the fifth assignment of error, Appellant maintains the trial court erred in admitting evidence relative to Appellant's two prior misdemeanor convictions and her involvement with past litigation.

{¶65} Appellant moved the trial court for an order in limine barring Appellee from introducing evidence or making inferences as to Appellant's prior misdemeanor convictions and her involvement in a prior lawsuit with Allstate Insurance Company. Appellant asserts the introduction of such evidence only served to confuse, inflame and prejudice the jury as to her character; therefore, the references should have been excluded pursuant to Ohio Rules of Evidence 401, 402, and 403.

{¶66} At trial, the following exchange occurred as to Appellant's prior eviction from Canton Centre Mall:

{¶67} "Q. And you said earlier in your testimony that part of the reason that you went to the barn, left Canton Centre mall was because Canton Centre was going down hill, correct?

{¶68} "A. Yes.

**{¶69}** "Q. Okay.  The truth is, however, ma'am you were evicted, weren't you?

**{¶70}** "Mr. Rothenbuecher: Objection, Your Honor.

**{¶71}** "The Court: Overruled.

**{¶72}** "A. Yes.

**{¶73}** "Q. 'Cause at some point you were no longer current on your rent at Canton Centre, correct?

**{¶74}** "A. Yes, not totally correct.

**{¶75}** "Q. Well, is it correct or not, ma'am?

**{¶76}** "A. No.

**{¶77}** "Q. Okay.

**{¶78}** "And we'll do this if we have to for every single thing we talk about.

**{¶79}** "A. That's fine.

**{¶80}** "Q. We'll go to your deposition transcript.  Okay?

**{¶81}** "A. That's fine.

**{¶82}** "Q. I'll put that up here - - and I don't know what the focus is here.

**{¶83}** "There we go.

**{¶84}** "And if you'll look at your deposition - - this is from your first deposition, Page 33.

**{¶85}** "A. Yes.

**{¶86}** "Q. Line 11.  With regard to Canton Centre Mall, were you always current on your rent, and the answer there is what?

**{¶87}** "A. No.

**{¶88}** "Q. Okay. So that is correct what I asked you?

**{¶89}** "A. It was a dispute.

**{¶90}** "Q. Right.

**{¶91}** "A. Over a month.

**{¶92}** "Q. And, ma'am, you were in fact eventually evicted from Canton Centre Mall, weren't you?

**{¶93}** "A. Yes, Walmart was coming.

**{¶94}** "Q. Ma'am, I need you to answer my questions.

**{¶95}** "It's true, is it not, that you were evicted from Canton Centre Mall?

**{¶96}** "A. Yes.

**{¶97}** "Q. Okay?

**{¶98}** "A. Walmart was coming.

**{¶99}** "Q. And, in fact, ma'am, the items that you had at those stores were taken from you, weren't they?

**{¶100}** "A. No.

**{¶101}** "Q. They were chained away from you and padlocked away from you, correct?

**{¶102}** "A. The night the furniture store left.

**{¶103}** "Q. Ma'am, the items - -

**{¶104}** "A. The next morning the store was - -

**{¶105}** "* * *

**{¶106}** "Q. Right.  They were chained and padlocked away from you?

**{¶107}** "A. Yes.

**{¶108}** "Q. And that wasn't just for a day or two, correct?

**{¶109}**  "A. No, it was for a year.

**{¶110}**  "* * *

**{¶111}**  "Q. You're referring to the antiques that were chained and padlocked and that you claim were damaged by Canton Centre Mall, correct?

**{¶112}**  "A. No.

**{¶113}**  "Q. Clearly, though, not the first time you complained about someone damaging your items, right?"

**{¶114}**  Tr. at 316-319.

**{¶115}**  As to the Allstate litigation, the following exchange occurred on the record:

**{¶116}**  "Q. You would not come into court and be dishonest?

**{¶117}**  "A. No.

**{¶118}**  "The Court: We've already been through that part.

**{¶119}**  "By Mr. Williams:

**{¶120}**  "Q. And you've never done that before, right?

**{¶121}**  "A. Not to my knowledge.

**{¶122}**  "Q. You had a court proceeding about a garnishment of a bank account.

**{¶123}**  "Do you remember that?

**{¶124}**  "Mr. Rothebuecher: Objection, Your honor.

**{¶125}**  "A. Yes.

**{¶126}**  "The Court: Well, slow down.

**{¶127}**  "Yeah, I would sustain that.

**{¶128}**  "Mr. Williams: Okay.

**{¶129}** "Your Honor, I'm going to go into statements made in that proceeding under oath.

**{¶130}** "The Court: Well, I think I've explained what I would permit before the trial. So stick to what I permit and then we won't have any problem.

**{¶131}** "Mr. Williams: Okay.

**{¶132}** "The Court: Okay? It's pretty clear what I said I would permit. Okay.

**{¶133}** "By Mr. Williams:

**{¶134}** "Q. You would never represent to anyone, would you, that money was taken out of an account, your account, was to pay employees and that they had to resign because that money was taken? If it wasn't true?

**{¶135}** "Mr. Rothenbuecher: Objection.

**{¶136}** "By Mr. Williams:

**{¶137}** "Q. Right?

**{¶138}** "Mr. Rothenbuecher: Objection, Your Honor.

**{¶139}** "The Court: Okay. Let's approach.

**{¶140}** - - - - - - - -

**{¶141}** (A conference was held at the bench outside the hearing of the jury.)

**{¶142}** - - - - - - - -

**{¶143}** "The Court: I had a pretrial ruling that said that there is two convictions.

**{¶144}** "Mr. Williams: Right.

**{¶145}** "The Court: I have no idea what those convictions are about.

**{¶146}** "Mr. Williams: Right. These aren't about the convictions.

**{¶147}** "The Court: All right.

**{¶148}** "Then all I've permitted you to talk about is the two prior convictions.

**{¶149}** "Mr. Williams: Maybe I'm doing it a bad way. I'll try and clean it up.

**{¶150}** "What I'm trying to get, she's got under oath in Allstate case, the Allstate examiner says, You lied to the Court to get money, to keep money from being taken out of your account and I can prove it and here's how, and she goes through it and she goes, You're right; that's not true.

**{¶151}** "The Court: Is that in a deposition?

**{¶152}** "Mr. Williams: Yes.

**{¶153}** "The Court: Do you have the transcript?

**{¶154}** "Mr. Williams: Yes.

**{¶155}** "Mr. Rothenbuecher: It's in a different case.

**{¶156}** "The Court: I don't know why you didn't object to it.

**{¶157}** "Mr. Rothenbuecher: I did object.

**{¶158}** "The Court: Not until you got to the middle.

**{¶159}** "Mr. Rothenbuecher: Yeah. This is totally different now. This is. Testimony about a garnishment.

**{¶160}** "The other was clothes, ceiling falling in.

**{¶161}** "The Court: I haven't been aware that you were going to ask this stuff.

**{¶162}** "Mr. Williams: I said it in my opening.

**{¶163}** "The Court: Yeah I know.

**{¶164}** "Mr. Williams: She's going to tell me she didn't say that or that she did and then I can impeach her with the deposition."

**{¶165}** "* * *

**{¶166}** "The only thing that I've permitted is that there is two prior convictions.

**{¶167}** "So, where are we trying to go with this?

**{¶168}** "Mr. Williams: It, she's made a misstatement to the Court in a prior case.

**{¶169}** "It's - -

**{¶170}** "The Court: Okay.

**{¶171}** "Mr. Williams:    - - along the lines of misstatement in a deposition testimony.

**{¶172}** "What I'd like to be able to do, Your Honor, is say, Did you ever make a misstatement to the Court in any prior case, did you ever misrepresent to a judge what the facts and circumstances of a case where [sic].

**{¶173}** "I've got the sworn deposition here that plays it out and I think it's relevant and, again, goes to her, directly to her credibility.

**{¶174}** "The Court: Just, I don't know anything about that case, I don't know the context of it.

**{¶175}** "I think if it's something you wanted to introduce, you should have told me about it.  I haven't been made aware about this thing.

**{¶176}** "Mr. Williams: We referenced it in our opening statement, and I guess that - -

**{¶177}** "The Court: I don't know your case.

**{¶178}** "You know, you guys have had this for two years and as I told you at the beginning of the case, I can rule on some things as I've listened to it.

**{¶179}** "I mean, this is about this case, I mean, you've made a lot of questions on deposition about her mind changing and things changing.

**{¶180}** "I wish this would have been objected to as soon as he started anything about Allstate.  Because the door has somewhat been left open.

**{¶181}** "Mr. Rothenbuecher: may I speak to that?

**{¶182}** "The Court: Yes.

**{¶183}** "Mr. Rothenbuecher: Your Honor, when he's talking about Allstate.

**{¶184}** "There was a roof claim for Allstate that took place in the barn and that's not a problem because I opened the door on that claim.

**{¶185}** "But now he's going to Allstate claim that relates to sewage and theft items at different facility.

**{¶186}** "Now there are similar items, she had them both places, but what we're doing here is taking an argument on a proceeding that you already ruled we're not going to be talking about and the other one is this, it's about a Court proceeding she talked in was about employees and payment and nothing to do with this inventory or anything.

**{¶187}** "The Court: Well, when I walked into this trial, no one has told me about three cases with Allstate and now you're asking me to make rulings on testimony when I don't know anything about it.

**{¶188}** "Mr. Williams: May I, Your Honor?

**{¶189}** "The Court: Well, no.  At this point I'm going to be honest with you: I'm not going to let it in.

**{¶190}** "* * *

**{¶191}** "And I'd rather stick to my ruling as to the two prior convictions and I think that's going to get your point that you're trying to make to them.

{¶192}  "But since I didn't know anything about this, I think it's prejudicial for me to now let you keep kicking in the door that they opened a little bit.  Okay?

{¶193}  "Mr. Williams: Understand, Your Honor.

{¶194}  "The Court: So for better or worse, that's my ruling.

{¶195}  "Mr. Rothenbuecher:  Your Honor, I'll comment on the record I will not make any comment in closing to a promise he made on that point and didn't say anything.  So to keep that off the table.

{¶196}  "The Court: Yeah, let's get this off the table.

{¶197}  Tr. at 391-394; 395-401.  (Emphasis added.)

{¶198}  We find the trial court did not err in allowing the testimony with regard to the two prior misdemeanor convictions as the same were relevant to the issues presented.

{¶199}  Further, with regard to the Allstate litigation, as evidenced in the record set forth above, Appellant's counsel admitted on the record to opening the door to the evidence admitted and did not object to the same on the record.  The trial court excluded the remainder of the evidence.  We find the trial court did not abuse its discretion with regard to the Allstate litigation.

{¶200}  The fifth assignment of error is overruled.

VI, VII, VIII.

{¶201}  Appellant's sixth, seventh and eighth assignments of error raise common and interrelated issues; therefore we will address the arguments together.

{¶202}  Initially, we address Appellant's argument with regard to the trial court's instruction to the jury as to negligence.  Again, Appellant does not cite to an objection in

the record to the trial court's instruction, and this Court's review of the record does not evidence Appellant objected to the same.

**{¶203}** The trial court instructed the jury,

**{¶204}** "Duty of a landlord.

**{¶205}** "A landlord owes no duty towards a tenants's [sic] personal property, other than not to willfully damage the property, and the landlord has no affirmative duty to protect the property."

**{¶206}** Tr. at 749.

**{¶207}** Upon review of the instruction, we do not find the trial court abused its discretion in so instructing the jury.

**{¶208}** Appellant further argues the verdict in favor of Appellee on the negligence claim was in error. The jury found Appellant was sixty-seven percent negligent. We note a judgment supported by some competent, credible evidence will not be reversed as against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction Co.* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578. A reviewing court does not decide whether it would have come to the same conclusion as the trial court. Rather, we are required to uphold the judgment so long as the record, as a whole, contains some evidence from which the trier of fact could have reached its ultimate conclusions. *Hooten Equipment Co. v. Trimat, Inc.,* 4th Dist. No. 03CA16, 2004–Ohio1128, ¶ 7. We are to defer to the findings of the trier of fact because the trier of fact is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the testimony. *Seasons Coal Company, Inc. v. City of Cleveland* (1984), 10 Ohio St.3d 77, 461 N.E.2d 1273. We

may not substitute our judgment for that of the trier of fact. *Pons v. Ohio State Medical Board* (1993), 66 Ohio St.3d 619, 614 N.E.2d 748. 621, 66 Ohio St.3d 619, 614 N.E.2d 748.

{¶209}  Upon review of the record, there was sufficient, competent and credible evidence upon which the jury based its findings, and the trial court did not err in entering judgment accordingly.  Numerous witnesses, including the supervising bailiff, Appellee, his family, and others testified they never saw the items willfully destroyed by Appellee. Further, Appellant herself acknowledged the items were left out for a significant period of time before she could retrieve them, and the items were substantially damaged in storage in the years following the incident at issue.

{¶210}  The assignments of error are overruled.

{¶211}  The January 20, 2010 Judgment Entry of the Stark County Court of Common Pleas is affirmed.

By: Hoffman, P.J.

Edwards, J.  and

Delaney, J. concur

_____
HON. WILLIAM B. HOFFMAN

_____
HON. JULIE A. EDWARDS

_____
HON. PATRICIA A. DELANEY

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

YVONNE CURATOLO                          :
                                         :
        Plaintiff-Appellant              :
                                         :
-vs-                                     :        JUDGMENT ENTRY
                                         :
RICHARD CLAY, ET AL.                     :
                                         :
        Defendants-Appellees             :        Case No. 2010CA00037


For the reasons stated in our accompanying Opinion, the January 20, 2010 Judgment Entry of the Stark County Court of Common Pleas is affirmed.  Costs to Appellant.


_____
HON. WILLIAM B. HOFFMAN


_____
HON. JULIE A. EDWARDS


_____
HON. PATRICIA A. DELANEY